STATE EX REL. ROELVINK and another, Respondents, vs. ZEIDLER, Mayor, and another, Appellants.

*October 6—November 9, 1954.*

For the appellants there was a brief by *Walter J. Mattison,* city attorney, and *Alan H. Steinmetz,* assistant city attorney, and oral argument by *Mr. Steinmetz.*

For the respondents there was a brief by *Brooke Tibbs, Charles Saggio,* and *Howard H. Boyle, Jr.,* all of Milwaukee, and oral argument by *Mr. Tibbs* and *Mr. Boyle.*

STEINLE, J. On behalf of the appellants it is contended that the common council in adopting the resolution providing for a reconveyance of the property, acted without authority

under the statute, and attempted to usurp power granted only to the board of school directors, and that the mayor and city clerk acted within the rights and duties of their respective offices when they questioned the action of the common council and declined to sign and deliver the deed as directed.

The city of Milwaukee does not operate under the city school plan provided in secs. 40.80 to 40.827, Stats. School administration for cities of the first class,—the category of that of the city of Milwaukee,—is treated by provisions of ch. 38, Stats. The management, control, and supervision of both public common and high schools are vested in the board of school directors. Secs. 38.015 and 38.14. The board is an independent public body distinct from that of the common council and is elected separately. Sec. 38.02. The board may be sued. Sec. 38.06 (2). It is the function of the board to purchase sites, and purchase, erect, and lease buildings for the use of the public schools. Sec. 38.07 (2). The school-houses and the sites on which they are situated are the property of the city. No site shall be purchased or leased nor shall any schoolhouse be erected without resolution duly passed by the board. Deeds of conveyance and leases shall be made to the city. Sec. 38.07 (4). Upon notice from the board as to its financial requirements for the administration of the public schools, including the acquisition of property for school sites, it is the duty of the common council to levy and collect taxes and raise funds for the board for such purposes. Sec. 38.16 (1) (a), (b). All moneys received by or raised in the city for school purposes are disbursed by the city treasurer on orders of the president and secretary of the board and countersigned by the city comptroller. Sec. 38.16 (2). Whenever any real estate used for school purposes is sold, the proceeds are not placed in the general city fund, but become part of the fund to be applied on the purchase of real estate for school purposes. Sec. 38.21 (1).

Under the statutes the board alone is vested with authority to acquire real estate for school purposes. The common council has been granted no power in such respect. However, when property is acquired for such purpose, the title is not taken in the name of the board, but in that of the city. When acquired, the board utilizes, manages, and controls the property. Jurisdiction to function in such regard has not been granted to the common council. That property acquired for school purposes, but no longer so required, may be disposed of by sale is beyond question. Although the statutes are silent as to the matter of the alienation of such property, both as to the right of determining upon such consideration and as to the procedure to be followed, it would seem that the permission to the common council to sell such property without the consent of the board would contravene the purposes of ch. 38, Stats., and interfere with the function and responsibilities of the board. Were property which is intrusted to the board by law and for which it has a present or future use, sold without its consent, its programs undertaken for the development of schools might easily be made ineffective. Likewise, as to real estate no longer required by the board for school purposes. The decision as to when the need terminates must rest with the board, otherwise its plans and purposes could easily be rendered frustrate. We are obliged to conclude that the common council of the city of Milwaukee may not sell property acquired by the board of school directors for school purposes, without the consent of the board.

That the board of school directors acquired the property from the Roelvinks in 1946 for *school purposes* cannot be successfully refuted in view of the record.

The respondents contend that the signing and delivery of the deed by the mayor and city clerk constitute ministerial action, the performance of which they may not refuse. It is further contended that it was not within the province of these

city officers to "pass upon" the validity of the common council resolution. There is no attack upon the form or procedure of the resolution. The challenge goes to the requirement of the signing and delivery of the deed predicated upon a direction in the resolution embracing *ultra vires* action on the part of the common council.

That the mayor and city clerk are the "proper city officers" referred to in the common council's resolution as the persons directed to sign and deliver the deed, is not disputed.

For reasons later stated in this opinion, we conclude that the city clerk was not vested with authority to question the resolution of the common council, and that under the law he was obligated to comply with the direction therein contained. The other and obviously the most decisive issue confronting us concerns the mayor's declination to act in manner as the common council had directed. The respondents argue that in this situation the mayor occupied a dual role,—in one capacity charged with the exercise of discretion and in the other capacity not. They maintain that the deed was presented for his signature and delivery when he was acting in a capacity wherein he was not privileged to exercise discretion. Sec. 6.20 of the Milwaukee city charter provides that a resolution of the common council shall not take effect unless within five days after its passage it shall be duly certified by the city clerk and presented to the mayor for his approbation. If the mayor approves, he signs it; if not, he shall return it with reasons stated, after which it may be passed by two-thirds vote and become effective without the mayor's signature. If the mayor does not return it within five days of its presentation to him, it shall take effect in the same manner as if he had signed it.

In the instant situation the mayor did not return the resolution within five days after its presentation to him. Respondents' counsel contend that at the time when the

resolution was presented to the mayor for his signature, he was at liberty to exercise his discretion; but that after it had become effective (by virtue of his failure to have returned it), he was no longer privileged to exercise a discretion,—the direction then called for embracing only ministerial action.

In their asserted position that municipal officers duly charged with the performance of a ministerial act, must perform it and may not pass upon the validity of the mandate requiring them to act, respondents' counsel rely upon *State ex rel. Martin v. Zimmerman* (1939), 233 Wis. 16, 288 N. W. 454, and *State ex rel. Madison v. Bareis* (1946), 248 Wis. 387, 21 N. W. (2d) 721. In the latter case, *State ex rel. Madison v. Bareis,* the common council of the city of Madison had adopted a resolution directing the city clerk (1) to advertise for sealed bids for the purchase of certain Water Works Mortgage Revenue Bonds; and (2) to complete and execute the bonds and attached interest coupons by affixing his signature thereto. This, the city clerk refused to do, claiming that the proposed issue was invalid as not being within the provisions of the Wisconsin constitution. This court held that such acts were purely ministerial and that the performance thereof could be compelled by mandamus and that the city clerk was not entitled to raise issues of constitutionality and validity of the bonds. In *Roberts v. Madison* (1947), 250 Wis. 317, 27 N. W. (2d) 233, in an action brought later by a taxpayer, the bonds referred to in *State ex rel. Madison v. Bareis, supra,* were declared invalid.

In the case of *State ex rel. Martin v. Zimmerman, supra,* the secretary of state was required under the constitution and statutes of Wisconsin to publish an act of the legislature. He refused on ground that it was not validly enacted and approved. In holding that compliance could be compelled, this court, speaking through Mr. Chief Justice ROSENBERRY, said (pp. 20, 23) :

"The whole governmental process would be thrown into utter confusion if ministerial officers in one department in the absence of legislative authority assumed to exercise the power to pass upon the validity and constitutionality of the acts of officers of co-ordinate departments of government. If one ministerial officer or one officer in the performance of a ministerial duty may constitute himself a tribunal to pass upon the acts of other officers, such power might be assumed by all officers and the governmental process would be brought to a halt. . . .

"No discretionary power to pass upon the constitutionality of acts so authenticated and deposited with him [the secretary of state] can be inferred. . . .

"The secretary of state neither officially nor personally has any interest whatever in the matter of the publication of this act. If it turns out that an invalid law is published the responsibility therefor rests with the governor, not with the secretary of state. It is a thoroughly well-established principle of law that no person may raise the constitutionality of an act of the legislature who is not in his official capacity or personally affected by it."

In these cases the city clerk and secretary of state, respectively, had no official or personal interest in the action which they were called upon to perform. The principle laid down in these cases is controlling with reference to the action of the city clerk in the matter at bar. We are obliged to determine that he was not empowered to question the resolution or decline to sign the deed.

Is the mayor, as chief executive of the city, in a different position of authority than the city clerk with respect to challenging the resolution and declining to sign and deliver the deed?

Sec. 5.10 of the Milwaukee city charter (1934 compilation), provides:

"The mayor shall take care that the laws of the state and the ordinances of the city are duly observed and enforced;

and that all officers of the city discharge their respective duties . . . the mayor shall be the chief executive officer; . . ."

It is especially noted that in his official capacity the mayor is charged with the responsibility of "taking care that the laws of the state are duly observed and enforced." Were he to knowingly fail in such regard, his conduct might well be construed as nonfeasance in office.

As hereinbefore declared, the common council of the city of Milwaukee is not empowered by law to validly direct the conveyance of real estate in control of the board of school directors without that body's consent. Were the mayor to sign the deed, he too would participate in the illegal action of the common council and violate the law, the observance of which he is specifically charged to "take care of." The mayor, as chief executive of the city, occupies a position of responsibility comparable to that of the governor of the state in a matter of this nature. In *State ex rel. Martin v. Zimmerman, supra* (p. 23), it was said that, "If it turns out that an invalid law is published the responsibility therefor rests with the governor, not with the secretary of state." In that case also it was inferred that the governor may well have an interest in his official capacity to raise the question of the validity of the enacted law. Here, the mayor being similarly situated, had like authority in his official capacity to question the validity of the resolution. It is clear that when the common council of the city of Milwaukee by resolution acts legally and within the four corners of its authority in directing a conveyance of property by the mayor,—whether the mayor signs the resolution, or fails to return it in five days thereby effectuating its passage, or whether it is passed over his veto,—then the mayor thereafter is not in a position to exercise further discretion and decline to sign or deliver the deed. We note that in all of the cases which have come to our attention wherein a mayor has been compelled by manda-

mus to perform a duty in nature of a ministerial act, the compulsion is based upon mandate of *valid* authority to direct such act. See particularly: *State ex rel. State Historical Society v. Carroll* (1952), 261 Wis. 6, 51 N. W. (2d) 723; *State ex rel. Mellott v. McCombs* (1928), 125 Kan. 92, 262 Pac. 579; *Williams v. Stockton* (1925), 195 Cal. 743, 235 Pac. 986; and *McClendon v. State ex rel. Hot Springs* (1917), 129 Ark. 286, 195 S. W. 686.

It seems to us that when it appears that an ordinance or resolution is *invalid,* a mayor charged with the responsibility of "taking care" that the laws of the state are duly observed and enforced, and that the officers of the city properly discharge their duties, is not to be compelled by mandamus to execute a contract provided by an *invalid* ordinance or resolution. Consequently, we conclude that the remedy of mandamus does not lie to compel the mayor of the city of Milwaukee to sign and deliver the deed in question. The Roelvinks, as relators, had no clear right to compel the mayor to perform such act based upon the invalid resolution of the common council.

The board of school directors is not a party to this action. We are not called upon here to determine whether mandamus is the proper remedy to compel the board to act and pass judgment on this matter if and when properly brought before it, should the board neglect or refuse to take any action at all. It is, of course, clear that the board could not be compelled to act or render a decision in the matter in a particular way.

*By the Court.*—Judgment reversed, and cause remanded with directions to set aside the judgment and peremptory writ of mandamus and to direct dismissal of the action upon its merits.