STATE EX REL. SULLIVAN, Appellant, v. Boos, County Auditor of Milwaukee County, Respondent.

*January 6—March 6, 1964.*

For the appellant there were briefs by *Schmus & Panosian* of West Allis, and oral argument by *George A. Schmus.*

For the respondent there was a brief by *Robert P. Russell,* corporation counsel of Milwaukee county, and *C. Stanley Perry* of Milwaukee, and oral argument by *Mr. Perry.*

FAIRCHILD, J. 1. *The auditor's standing to question constitutionality.* Relator argues that the county auditor is a ministerial officer, without authority to withhold his signature because of his doubts concerning the constitutionality of an ordinance or statute which appears on its face to require the particular disbursement. The ordinance in question, on its face, appears to require the payment demanded by relator. Sec. 252.071, Stats. 1959, on its face, appears to authorize adoption of the ordinance. It is not claimed there was any procedural defect or insufficiency in the appropriation of money for the payment, nor that funds are unavailable. Clearly the auditor has no discretion to approve or disapprove the policy of increasing the salary. These things being true, it is relator's position that a peremptory writ of mandamus should issue, without determining the constitutional questions.

Conceding the clarity of the auditor's duty to pay if we may look no further than the ordinance, or the statute, the question is whether the character of the auditor's official position and duty place him in the category of a public officer who is permitted to question the constitutionality of an ordinance or statute which appears to impose the duty.

In *Fulton Foundation v. Department of Taxation* [1] we said:

"The general rule is that state agencies or public officers cannot question the constitutionality of a statute unless it is

[1] (1961), 13 Wis. (2d) 1, 11, 108 N. W. (2d) 312, 109 N. W. (2d) 285.

their official duty to do so, or they will be personally affected if they fail to do so and the statute is held invalid."

We also recognized that there is a further exception where the question raised is of great public concern, particularly where the circumstances are such that there is little likelihood that a taxpayer or other person whose interests are affected would take the steps required to get a determination of the question.[2]

In deciding that a particular officer could raise the constitutional question, this court has readily found in statutory language an implication of duty to determine the lawfulness of the act or expenditure. Thus in mandamus actions to compel the state director of budget and accounts to make disbursements, the director was permitted to challenge constitutionality because his statutory duties were deemed to include passing on the legality of the purpose of the expenditure.[3] A city treasurer directed by resolution to make a disbursement was held entitled to challenge, in a mandamus action, the legality of the payment because the resolution indicated that it was conditional upon the lawfulness of the payment.[4] The state treasurer was entitled to challenge, in a mandamus action, the legality of an expenditure, because of a statute which required her to pay such sums only as are authorized by law to be so paid.[5] A mayor was entitled, in mandamus, to challenge the validity of a resolution of the

---

[2] *Fulton Foundation v. Department of Taxation, supra,* p. 14b, footnote 1, on rehearing.

[3] See explanation in *Fulton Foundation v. Department of Taxation, supra,* footnote 1, p. 12, of *State ex rel. Thomson v. Giessel* (1952), 262 Wis. 51, 53 N. W. (2d) 726; *State ex rel. Larson v. Giessel* (1954), 266 Wis. 547, 64 N. W. (2d) 421; *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 72 N. W. (2d) 577.

[4] *Federal Paving Corp. v. Prudisch* (1940), 235 Wis. 527, 538, 293 N. W. 156.

[5] *State ex rel. Reynolds v. Smith* (1963), 19 Wis. (2d) 577, 582, 120 N. W. (2d) 664.

council requiring the mayor to execute a conveyance because the city charter charged him with the responsibility of taking care that the laws of the state are duly observed and enforced.[6]

Courts frequently permit an officer who controls the disbursement of public funds to challenge the validity of a statute or ordinance which appears to require payment, upon the theory that he has a personal interest to protect, in that he may be held liable if he permits the disbursement of public funds in what proves to be an unlawful manner.[7]

We have not overlooked the fact that this court has held, on occasion, that a particular officer may not defend against mandamus by challenging the validity of a statute, and has explained that the particular duty was ministerial and not discretionary, or ministerial and not quasi judicial. Thus the secretary of state was not permitted to defend against mandamus to compel him to publish a law by claiming that the governor's approval of it was not valid. It was said his duty was purely ministerial, but it was also stated that the secretary of state was not "in his official capacity or personally affected by it."[8] Where mandamus was brought to compel a city clerk to sign city bonds pursuant to an ordinance which was regularly adopted, it was held his duty was purely ministerial and not discretionary, and he could not raise the question of the validity of the ordinance in defending the mandamus action.[9] It was held that a city clerk, required by resolution of the council to sign a conveyance, could not defend a mandamus action by questioning the validity of the

[6] *State ex rel. Roelvink v. Zeidler* (1954), 268 Wis. 34, 43, 66 N. W. (2d) 652.

[7] *Fulton Foundation v. Department of Taxation, supra,* p. 12, footnote 1, and cases there cited; 34 Am. Jur., Mandamus, p. 878, sec. 89.

[8] *State ex rel. Martin v. Zimmerman* (1939), 233 Wis. 16, 23, 288 N. W. 454.

[9] *State ex rel. Madison v. Bareis* (1946), 248 Wis. 387, 392, 21 N. W. (2d) 721.

resolution, although the mayor, as previously pointed out, because of a duty to enforce the laws, could do so.[10]

We must now look at the nature of the duty and responsibility of the auditor.

The office of county auditor in Milwaukee county is filled by appointment by the county board. He has general direction over the accounts of the county, and must file a bond. Sec. 59.72 (3), Stats. Sec. 59.81 (3) requires that he countersign all orders and warrants drawn upon county funds, and the treasurer shall make no payments without the auditor's signature.

Sec. 59.84, Stats., creates a procedure for formulation of a budget, in the assembling of which, the county auditor is to participate. Sub. (12) provides:

"No payment shall be authorized or made and no obligation incurred against the county except in accordance with appropriations duly made. No payment shall be made or obligation incurred against any appropriation unless the county auditor first certifies that there is a sufficient unencumbered balance in the appropriation and that funds therefrom are available or will be available to make the payment or to meet the obligation concerned when it becomes due and payable. . . ."

The subsection goes on to provide that every payment made in violation of sec. 59.84, Stats., shall be illegal and all county officers who knowingly authorize or make the payment shall be liable to the county.

Although it might be possible to construe the auditor's duty under this language as only to enforce compliance with budget and appropriation procedure, we think that the tenor of these statutes, taken together, sufficiently suggests that the auditor has a high degree of responsibility for lawful expenditures, so that the term "appropriations duly made" in sec. 59.84, Stats., must embrace fundamental lawfulness as

---

[10] *State ex rel. Roelbink v. Zeidler, supra,* p. 41, footnote 6.

well as compliance with budgeting and appropriation procedures. This interpretation is in line with the interpretations previously noted, that various statutory language imposes upon an officer a duty to determine lawfulness. There is the further element that sec. 59.84 suggests a real possibility of personal liability on the part of the auditor if he participates in making unlawful payment of county funds, believing the payment to be unlawful, and the still further element that if the auditor is not in a position to protect the public treasury by reviewing the fundamental lawfulness of expenditures it may be unlikely that questionable ones will be reviewed.

We note that in 1959, Milwaukee county sought mandamus in an original action in this court to compel the present auditor to transfer certain funds to purchase office equipment for a county executive. The auditor demurred, and argued that the law providing for a county executive was invalid. We determined that it was valid in part and granted mandamus. Evidently it was assumed by all parties at that time that the auditor could properly challenge the constitutionality of a statute as a defense in mandamus.[11]

We conclude that the auditor has the standing in the instant action to challenge the validity of the ordinance which increases the salaries, and of the statute which appears to authorize the ordinance.

*2. The constitutional questions.* Three constitutional provisions control the setting of compensation for circuit judges. They are as follows:

Sec. 7, art. VII: ". . . Every circuit judge shall . . . receive such compensation as the legislature shall prescribe."

Sec. 10, art. VII: "Each of the judges of the supreme and circuit courts shall receive a salary, . . . they shall receive no fees of office, or other compensation than their salary, . . ."

---

[11] *State ex rel. Milwaukee County v. Boos* (1959), 8 Wis. (2d) 215, 99 N. W. (2d) 139.

Sec. 26, art. IV: ". . . [N]or shall the compensation of any public officer be increased or diminished during his term of office. . . ."

The last-named provision is found in the article dealing with the legislature. The term "public officer" as there used has been interpreted by this court as including only "such officers as receive a fixed salary payable out of the public treasury of the state." [12] As stated in a 1915 decision,[13] ". . . it is beyond question that he [a circuit judge] was a public officer." In *Milwaukee County v. Halsey* [13a] this court said that if an expense allowance granted by the legislature to all circuit judges then in office be deemed "compensation," the act would be invalid on its face by reason of sec. 26, art. IV, Wis. Const. The fact that supreme court justices had always accepted the prohibition against midterm increases as applying to them is documented in the 1909 decision in *State ex rel. Bashford v. Frear.*[14] The issue in that case was the interpretation of the word "term" where a justice succeeded to the unexpired term of someone else, but the applicability of sec. 26, art. IV, to a justice or judge as a public officer was unquestioned. Two proposed constitutional amendments to exempt officers with long terms from the prohibition against midterm increases have recently been defeated at the polls. Joint Resolution No. 11, 1961, rejected in 1961, would have exempted public officers, other

[12] *Board of Supervisors v. Hackett* (1867), 21 Wis. 620 (*613), 625 (*617); *Rooney v. Supervisors of Milwaukee County* (1876), 40 Wis. 23, 26; *State ex rel. Martin v. Kalb* (1880), 50 Wis. 178, 6 N. W. 557; *State ex rel. Sommer v. Erickson* (1904), 120 Wis. 435, 98 N. W. 253; *Sieb v. Racine* (1922), 176 Wis. 617, 625, 187 N. W. 989; *Dandoy v. Milwaukee County* (1934), 214 Wis. 586, 588, 254 N. W. 98.

[13] *State ex rel. Wickham v. Nygaard* (1915), 159 Wis. 396, 401, 150 N. W. 513. See also *Petition of Breidenbach* (1934), 214 Wis. 54, 252 N. W. 366.

[13a] (1912), 149 Wis. 82, 85, 136 N. W. 139.

[14] (1909), 138 Wis. 536, 120 N. W. 216.

than members of the legislature, whose terms of office were four years or more. Joint Resolution No. 7, 1963, rejected in 1963, would have exempted justices of the supreme court and judges of other courts. Acts of the legislature changing the salaries of justices and circuit judges have almost uniformly provided that the change shall apply to terms beginning in the future, thus indicating that the legislature considered sec. 26, art. IV, Wis. Const., applicable to justices and circuit judges as public officers. The parties have, by stipulation, given us the history of the past instances where the county board of Milwaukee county has granted or increased the county salary. Until the ordinance of November 29, 1960, it clearly appears that the county board has uniformly made the increase effective only as to terms beginning after it was granted, and that the judges considered that the constitution so required. If there could have been any question whether the term "public officer" in sec. 26, art. IV, includes a justice or a circuit judge, almost universal practical construction has settled it.

For more than sixty years, the compensation received by circuit judges of the second circuit (Milwaukee county) has consisted of two portions. One is the salary prescribed by the legislature to be paid out of the state treasury to every circuit judge in the state. The other portion is paid out of the county treasury.

After Judge SULLIVAN began his term in 1960, he received a salary from the state at the rate of $15,000 per year, since that term began after June 1, 1959.[15]

Judge SULLIVAN received a salary from the county at the rate of $4,000 per year. This salary stemmed from three statutory sources:

---

[15] The salary from the state for terms commencing June 1, 1951, and thereafter was $10,000; June 1, 1955, $12,000; and June 1, 1957, $14,000. It has recently been raised to $16,000 for terms commencing after September 1, 1963.

(1) $1,000 which Milwaukee county only is required to pay. Sec. 252.016 (3), Stats.

(2) $1,000 which can be paid by Milwaukee county only, originally optional, but which cannot be repealed without action by the legislature. Sec. 252.016 (3), Stats.[16]

(3) $2,000 pursuant to sec. 252.071, Stats. This statute gives every county in the state authority to pay each circuit judge in the circuit such annual salary as the county board may determine, except that it shall not exceed $3,000 in the aggregate for the entire circuit. Sec. 252.071 was originally created by ch. 217, Laws of 1925, was not applicable to Milwaukee county, and contained a population standard which apparently could then have been met only by two other counties.[17] By ch. 507, Laws of 1947, it was amended to authorize such action by any county, and to limit the aggregate salary in any circuit to $2,000. The limit was raised to $3,000 by ch. 252, Laws of 1957. The ordinance involved in this case was an exercise of the $1,000 additional authority given in 1957.

In *Milwaukee County v. Halsey* in 1912 [18] this court considered and upheld the forerunner of that part of sec. 252.016 (3), Stats., which compelled Milwaukee county to pay a $1,000 annual salary to the circuit judges in that circuit. This part of sec. 252.016 (3) had its source in ch. 377, Laws of 1897. After paying this salary to a circuit judge for some years, the county brought action to recover it. The statute was attacked as a violation of several constitutional provisions, *i.e.,* (1) sec. 23, art. IV, Const., requiring a uniform system of county government, (2) sec. 31, art. IV, prohibiting special or private laws on certain subjects, (3) sec. 1, art. VIII, requiring a uniform rule of taxation, and

---

[16] *Petition of Breidenbach, supra,* footnote 13.

[17] County salary was paid for a time in Racine county, upon its authority. 21 Op. Atty. Gen. (1932), 483.

[18] 149 Wis. 82, 136 N. W. 139.

sec. 18, art. IV, regulating private or local bills. All the challenges were rejected. The court held that the office of circuit judge is not a county office, and the statute did not relate to the system of county government. It also declared that the legislature may impose some of the expense of administering justice upon the counties; that a burden may be cast upon one class of counties from which another class is exempted; that Milwaukee county could properly be placed in a separate class on the basis of numbers, wealth, amount of litigation, the extra expense caused the state, and the advantages received from having a circuit court of several branches within the county. The $1,000 mandatory annual salary, now appearing in sec. 252.016 (3), was held to be a valid imposition upon Milwaukee county.

The additional $1,000 which sec. 252.016 (3), Stats., says Milwaukee county "may" pay was before this court in *Petition of Breidenbach.*[19] This portion of sec. 252.016 (3) stemmed from ch. 248, Laws of 1923. In 1923 the county board elected to pay this additional sum annually. In 1933, during the depression, Milwaukee county contended that the statute authorizing such payment was void and that it could discontinue the payments without waiting to the end of the terms of the judges. The circuit judges brought an original action for declaratory relief.

The county claimed that the statute, in giving authority to the county to choose to pay additional compensation to circuit judges violated secs. 7 and 10, art. VII, Wis. Const., because their compensation must be prescribed by the legislature and they must not receive other compensation.

This court upheld the statute, against these claims, on the theory that it was a valid option law which did not vest legislative power in the county board. The court further held that in the absence of express authority in the statute to rescind the option, once exercised, it could not be rescinded.

[19] *Supra,* footnote 13.

The opinion of this court in *Breidenbach,* upholding the statute then under consideration, made it clear that the court was applying the presumption of constitutionality of an act of the legislature and was taking note of and responding to the judicial duty to choose, when a law is open to two constructions, the construction which will save it from condemnation in preference to one which renders it unconstitutional.

Although this court, in *Breidenbach,* upheld that legislative grant of authority to the county board of Milwaukee county, the opinion clearly implied that a statute delegating a substantially greater degree of discretion to a county board with respect to a county salary for a circuit judge would be invalid because of the requirement of sec. 7, art. VII, Wis. Const., that the salary of circuit judges be prescribed by the legislature.[20]

One of the questions raised by the auditor in the present case is whether sec. 252.071, Stats., under secs. 7 and 10, art. VII, Wis. Const., validly confers authority on the county boards. Sec. 252.071 does not require any county to pay any salary, but authorizes such payment by any county. It expresses no standard which is to govern any county board in deciding that county salary is to be paid and no standard readily appears by implication. It does limit the total county salary to be paid under it to an aggregate of $3,000 in any circuit. Sec. 252.071 is not limited, as was the statute considered in *Breidenbach,* to a particular class of county, and it confers somewhat wider discretion upon the county boards.

We deem it unnecessary, however, in order to dispose of the present case, to decide whether sec. 252.071, Stats., is a valid and effective grant of authority to county boards. As will be seen, we conclude that relator cannot succeed in this case in any event, whether sec. 252.071 be valid or invalid.

[20] *Petition of Breidenbach, supra,* pp. 61–63, footnote 13.

Assuming, as we do for the purpose of this case, that sec. 252.071, Stats., is a valid grant of authority to a county board, even though it lacks standards governing the exercise of the authority, we are of the opinion that a grant of additional salary by the county board pursuant to sec. 252.071 was an increase in compensation as of the date the county board made it effective. It follows that sec. 26, art. IV, Wis. Const., prevents payment of such increase to relator during the term which had commenced prior to that date.

Relator argues that there were sufficient standards implied in sec. 252.071, Stats., so that the "increase" made effective by the county board on January 1, 1961, must be viewed for the purpose of sec. 26, art. IV, Wis. Const., as if it occurred in 1957 when the legislature authorized the county salary to a maximum of $3,000 rather than $2,000. A much-closer question would be presented if a statute, enacted before a particular circuit judge's term began, provided for an increase to be put into effect upon the occurrence of some contingency, such as, for example, increase in cost of living or increase in work load. Then it might be said with more reason that an increase in the amount of money paid, occurring after the term began, would not constitute an increase in the compensation prescribed by the legislature before the term began. But sec. 252.071 contains no such standard and seems to us clearly to leave the whole question of whether any increase shall be made, the date at which it shall begin to be paid, and the amount of any increase (up to the $3,000 maximum) in the discretion of the respective county boards.[21]

---

[21] A tabulation of 1964 salaries of circuit judges, as reported to the judicial council, shows that the full $3,000 authorized by sec. 252.071, Stats., is now being paid in 11 circuits, counting the second (Milwaukee) as one of these. In 10 circuits the aggregate county salary is less than $3,000, ranging from $400 in one circuit to $2,500 in another. In four circuits, no county salaries are paid. Forty-five counties pay county salary to circuit judges; 26 (count-

We have considered an opinion issued by the attorney general on April 23, 1963, to the district attorney of Dane county. The attorney general advised that, under sec. 252.071, Stats., a county may increase the compensation of a circuit judge during his term of office. He assumed, as we do for the purpose of this case, the constitutionality of sec. 252.071. He reasoned that since sec. 26, art. IV, Wis. Const., has been held not to prohibit the increase or diminution of compensation during the term of office of an officer paid out of the county treasury, it is applicable only to such salary as may be paid to a public officer out of the state treasury.

We think this view is erroneous. It appears from the decisions on the subject [22] and particularly *Board of Supervisors v. Hackett* [23] that the limitation of the meaning of "public officer" in sec. 26, art. IV, Wis. Const., to an officer receiving a fixed salary payable out of the treasury of the state (and hence the exclusion of officers of counties and municipalities) arose from the fact that it appeared to be awkward to apply sec. 26 to the remuneration of the large class of officers who were ordinarily compensated by fees for specific services and that local officers were ordinarily so compensated in the early days. When the court construed the term "public officer" it was speaking in terms of a class of officer, and delineated a class of officer to which sec. 26 could reasonably be applied under the circumstances at the time. As times have changed, many local officers are normally compensated by salary out of the local treasury. But the fact that sec. 26 does not happen to apply to such salaries does not mean that sec. 26 does not apply to compensation out of county money to the class of officers to which sec. 26 was intended to apply.

ing Menominee and Shawano as one) do not. Judicial Council, 1963 Judicial Statistics.

[22] *Supra,* footnote 12.

[23] *Supra,* footnote 12.

We think the attorney general has also overlooked in the particular case of circuit judges, the relationship of secs. 7 and 10, art. VII, and sec. 26, art. IV, Wis. Const. Sec. 10, art. VII, forbids compensation to circuit judges in addition to their salary. Sec. 7, art. VII, requires that such compensation be prescribed by the legislature. Sec. 26, art. IV, prohibits an increase, or diminution of compensation during a term. Reading these provisions together, it must follow that no county salary can be paid to a circuit judge unless it constitutes a part of the salary prescribed by the legislature, and whatever salary has been prescribed by the legislature must not be increased nor diminished during the circuit judge's term.

The attorney general noted that in *Columbia County v. Wisconsin Retirement Fund* [24] we said: "The Wisconsin constitution, sec. 26, art. IV, does not apply to counties." Apparently he deems this some authority for payment of a midterm increase out of county funds to a public officer whose state salary could not be increased. In the *Columbia County Case* we were considering a statute which compelled counties to participate in a retirement system for employees. When the quoted sentence is read in context, particularly in the light of the cases cited to support it, it is clear that it was stated in answer to a claim that the statute granted an increase in compensation to public officers during their terms of office in violation of sec. 26, art. IV. It bears no implication that counties may be authorized to grant midterm increases out of county funds to salaried state officers.

*By the Court.*—Judgment affirmed.

GORDON and BEILFUSS, JJ., took no part.

DIETERICH, J. (*dissenting*). Although I agree that Robert E. Boos, county auditor of Milwaukee county, has stand-

---

[24] (1962), 17 Wis. (2d) 310, 326, 116 N. W. (2d) 142.

ing to challenge the validity of the ordinance which increases the salaries, and also the statute purporting to authorize the ordinance, I cannot agree with the manner in which the majority has disposed of the constitutional question of the applicability of sec. 26, art. IV of the Wisconsin constitution to members of the judiciary.

This court has held that the purpose of the constitutional provision prohibiting increase in salary during the term of office is "to protect the public against the evil of letting a public official use his official power and influence to augment his own salary." *State ex rel. Zimmerman v. Dammann* (1930), 201 Wis. 84, 96, 228 N. W. 593. If this be true, it is indeed difficult to see how such restrictions may be logically applied to members of the judiciary—a body which is nonpartisan by its very nature, and which is divorced from the political and policy-making spheres of state government.

When the effects of applying such a restriction to the judiciary, as well as to members of the other branches of government, are considered, the results are ludicrous. A state legislator—an official at the very zenith of state policy making—may vote himself a raise in pay during a session, and succeed to the increased salary less than two years later in the case of an assemblyman, and four years in the case of a senator, assuming they are re-elected. Yet members of the judiciary, who play no active part in policy making, are prohibited by the majority's decision in the instant action from taking any increase in salary whatsoever throughout their entire terms—which are six years for county and circuit judges and ten years for justices of the supreme court.

This court has recognized that the placing of the restriction against salary changes in the article dealing with the legislature (art. IV), rather than in the article on the judiciary (art. VII), creates a sizeable ambiguity as to the application of this restriction to members of the judicial branch of the state government. In *State ex rel. Bashford v. Frear*

(1909), 138 Wis. 536, 542, 544, 545, 120 N. W. 216, it was stated that:

"Here [art. VII] we have the office, the term of office, the incident of office, to wit, the salary and the exclusion from every field of official life outside of the judicial field during such term, to wit, the elective term. All that, is in the article especially devoted to the judiciary.

"Turning now to art. IV, devoted to the legislature and its powers, we find that it creates an absolute disability of the lawmaking body to change, in any way, either by increasing or decreasing, any public officer's compensation 'during his term of office.' There is no prohibition in those parts of the constitution dealing with the different classes of state officials or their terms of office on the subject of increase or decrease of compensation, as in the other states to which we have referred. . . .

". . . If the section which relates to the salary contained a prohibition as to the increase or decrease, as in other state constitutions, there would be less difficulty in reaching a conclusion. . . .

"From what has been said, it is quite clear that the meaning of 'his term of office' in art. IV of the constitution is far from being free of ambiguity. Even if it were used in an appropriate section in art. VII, dealing with the office of justice of this court, the term of office, and the compensation, it would still be, as an original matter, far from being free from obscurity. That is well illustrated by the decisions of the different courts which have defined it, only by resort to rules for judicial construction. It will be seen by an examination of the decisions . . . that in every one of them the term under discussion, or some similar term, was treated as involving obscurity of meaning."

The inequity wrought by application of sec. 26, art. IV, to the judiciary is nowhere more obvious than in the present situation of the Wisconsin supreme court. In 1953, the salary of a supreme court justice was $12,000 per year, whereas the present salary (as set by the 1963 legislature) is $24,000. Thus, in the past ten years the legislature has seen

fit to double the salary, but the elected justices must commit themselves to ten years at the salary in effect when they first come to the bench. The tacit acceptance of sec. 26 as applying to the judiciary has led to the creation of a salary differential of $10,000 per year between the lowest and highest paid associate justices. When the legislature sets a new salary for supreme court justices, it takes a minimum of ten years for all elected members of the court to reach that figure. The rule in the *Bashford Case* to the effect that an appointee to an unexpired term on the supreme court may take advantage of intervening salary increases between the time the former incumbent took office and the time the appointee takes office, has similarly led to a situation where an appointee may receive $24,000 per year, while the seasoned members of the court receive as little as $14,000. This has the effect of penalizing longevity and tenure—which goes against the grain of contemporary economic conditions, wherein job seniority is recognized as an economic asset in almost all occupations.

The majority opinion cites cases holding that state judges are "officers" within the meaning of sec. 26.[1] It thus appears that the applicability of that section to the judiciary is the result of judicial decision, rather than legislative or constitutional mandate. Indeed, sec. 26 was held to be highly ambiguous insofar as its application to the judiciary is concerned in the *Bashford Case,* and the long-lived acquiescence in such application is also grounded in judicial decision. This court has not hesitated to abrogate judicially made provisions when the changing times have made it evident that such abrogation is necessary. In 1962, we abolished the age-old concept of assumption of risk in host-guest automobile acci-

---

[1] *Milwaukee County v. Halsey* (1912), 149 Wis. 82, 85, 136 N. W. 139. *State ex rel. Wickham v. Nygaard* (1915), 159 Wis. 396, 401, 150 N. W. 513. *Petition of Briedenbach* (1934), 214 Wis. 54, 252 N. W. 366.

dent cases because the concepts of the old rule did not appear sufficiently valid under present-day customs. *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 378, 113 N. W. (2d) 14. Gross negligence incurred the same fate a few months later in *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 11, 114 N. W. (2d) 105, wherein we stated that:

"Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare decisis,* which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others 'long dead and unaware of the problems of the age in which he lives, do his thinking for him.' "

In *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 30, 115 N. W. (2d) 618, we abolished the rule of sovereign immunity, a doctrine which had its origins in James I's concept of the divine right of kings, and wound its way up through the English common law into the common law of Wisconsin. The long-standing immunity of charitable corporations from tort liability was similarly abolished because of the changing economy in *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 372, 107 N. W. (2d) 131, 107 N. W. (2d) 292. Wisconsin again departed from the great weight of long-standing authority in this country in *Goller v. White* (1963), 20 Wis. (2d) 402, 122 N. W. (2d) 193, wherein this court abrogated the doctrine of parental immunity in tort cases because it felt that a change was necessary in the interests of justice. In recent years we have also overturned prior interpretations of legislative enactments. See *State v. Esser* (1962), 16 Wis. (2d) 567, 115 N. W. (2d) 505 (defense of insanity), and *State v. Hoyt* (1963), 21 Wis. (2d) 284, 124 N. W. (2d) 47 (definition of manslaughter). See also

*Brown v. Board of Education* (1954), 347 U. S. 483, 74 Sup. Ct. 686, 98 L. Ed. 873, the United States supreme court's historic school-desegregation decision which overturned the age-old "separate but equal" doctrine first announced by that court in *Plessy v. Ferguson* (1896), 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256. Mr. Chief Justice WARREN, speaking for a unanimous court in the *Brown Case,* stated that (p. 492) :

"In approaching this problem, we cannot turn the clock back to 1868 when the [Fourteenth] Amendment was adopted, or even to 1896 when *Plessy v. Ferguson* was written. We must consider public education in the light of its full development and its present place in American life throughout the Nation."

It follows that there is nothing standing in the way of a change in the interpretation of the phrase "public officer" as contained in sec. 26, art. IV of the Wisconsin constitution, insofar as its applicability to the Wisconsin judiciary is concerned. There can be no doubt that a judge is a judicial officer, not a public official or public officer.

I am of the opinion that the ambiguity discussed in *State ex rel. Bashford v. Frear, supra,* should finally be dispelled by a ruling from this court to the effect that the restrictive provisions of sec. 26, art. IV, are inapplicable to members of the judiciary on the ground that they are not "public officers;" and would therefore overrule all prior cases to the contrary and reverse the judgment of the trial court in the instant action. The economic and social conditions existing at the time our constitution was drafted have long since changed, and, where it is possible, the constitution should be construed liberally, that it may continue as a useful instrument in the life of our society. Doubtful questions ought to be resolved in favor of the freedom of the living generation to govern its own affairs in the light of modern circumstances.

While the compensation attaching to a judicial office should not be such as to attract opportunists, when economic conditions reduce its value to the point that qualified men without independent means cannot afford to offer their services, there must be an adjustment. A reading of the debates of the framers of the Wisconsin constitution reveals that these men believed that in order to secure good and competent judges it is necessary to offer sufficient inducement for men of the highest order to assume the responsibilities of judicial office. See Journal of the Constitutional Convention (1848), p. 392. I would reverse the judgment of the trial court.