GARY I. GATES, Secretary Department of Employe Trust Funds
You request my opinion as to whether the changes to the state Accumulated Sick Leave Conversion Credit (ASLCC) program, enacted by 1991 Wisconsin Act 39 (1991 budget bill), violate article IV, section 26 of the Wisconsin Constitution (article IV, section26). As you state at page 1 of your request letter:
 The pertinent provisions in the bill are SECTION 1149 g [40.02 (22f)], SECTION 1152h [40.02 (25) (b) 6g], SECTION 1153 r [40.02 (49)], SECTION 1154 ky [40.04
(10)], SECTION 1154 Le [40.05 (4) (ad)], SECTION 1154 Lg [40.05 (4) (b)], SECTION 1154 Li [40.05 (4) (bc)], SECTION 1154 Lj [40.05 (4) (br)], SECTION 1154 p [40.51 (2)] and SECTION 1154 q [40.51 (10m)].
The effective date of such changes is January 1, 1992. Sec. 9419 (1g) of the 1991 budget bill.
The ASLCC program allows state employes to convert accumulated sick leave to health insurance premium coverage during retirement. A state employe's accumulated sick leave is converted into a credit equal to the employe's final hourly wage multiplied by the employe's total hours of unused sick leave. *Page 188 
Health insurance premiums are paid from this credit for the employe and surviving dependents until the credit is exhausted. Sec. 40.05
(4)(b), Stats. In order to continue under the state health insurance plan, the employe must be eligible for an immediate Wisconsin Retirement System (WRS) annuity (age 55 for the general, elected and executive employes; age 50 for protective employes). This immediate annuity requirement is waived for state employes with twenty years of creditable service who are eligible for an immediate annuity, but elect to defer application. Sec.40.02(25)(b)6., Stats. ASLCC premium payments may be delayed "for up to 10 years . . . if the employe or surviving insured dependents are covered by a comparable health insurance plan." Sec. 40.05(4)(b), Stats., as amended by 1991 Wisconsin Act 107.
The changes to the ASLCC program in the 1991 budget bill affect only the group defined as "[a]ny state constitutional officer, member or officer of the legislature, head of a state department or state agency who is appointed by the governor with senate confirmation, or head of a legislative service agency as defined in s. 13.90(1m)(a)." Sec. 40.02(25)(b)6g, Stats., as created by the 1991 budget bill. As you state at page 1 of your request letter:
 Under these changes, an individual in one of the specified positions would be entitled to use of accumulated sick leave conversion credits to pay health insurance after reaching age 55 regardless of the person's age at termination of employment including an unconditional right to re-enroll in the state's group health insurance program. The person would also have the amount of that person's ASLCC benefit determined not by the salary actually received by that person, but instead by a salary rate determined after the person's period of service had ended. [see s. 40.05(4)(bc)]. These changes apply to each person in one of the specified positions whose service terminates on or after January 1, 1992 [see s. 40.02(25)(b) 6g]. *Page 189 
Your first question asks:
 Does basing the ASLCC benefit on a salary rate to be determined after a person leaves office violate the prohibition in article IV, section 26 of the Wisconsin Constitution prohibiting granting of extra compensation for any public officer after the service has been rendered?
It is my opinion that the ASLCC program health insurance premium payments constitute part of compensation and that article IV, section 26, precludes the Legislature from establishing that portion of compensation based on a salary to be determined after the person is no longer employed.
Article IV, section 26 provides:
 The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into; nor shall the compensation of any public officer be increased or diminished during his term of office except that when any increase or decrease provided by the legislature in the compensation of the justices of the supreme court or judges of any court of record shall become effective as to any such justice or judge, it shall be effective from such date as to each of such justices or judges. This section shall not apply to increased benefits for persons who have been or shall be granted benefits of any kind under a retirement system when such increased benefits are provided by a legislative act passed on a call of ayes and noes by a three-fourths vote of all the members elected to both houses of the legislature, which act shall provide for sufficient state funds to cover the costs of the increased benefits.
Payment of health insurance premiums under the ASLCC program is "compensation" as that term is used in article IV, section 26. While the Wisconsin Supreme Court has stated that words "salary" and "compensation" as used in article IV, section 26, are employed synonymously, that statement was *Page 190 
made in the context of determining whether reimbursement of expenses constituted "compensation." Geyso v. Cudahy, 34 Wis.2d 476, 485,149 N.W.2d 611 (1967); Milwaukee County v. Halsey, 149 Wis. 82,86-87, 136 N.W. 139 (1912). When the court was faced with the question as to whether retirement systems were covered by the article IV, section 26 prohibition, it had no difficulty finding such "deferred and diffused" compensation to be within the prohibition. State ex rel. Thomson v. Giessel, 262 Wis. 51,63-64, 53 N.W.2d 726 (1952). The Legislature and electorate thereafter further apparently construed the prohibitions of article IV, section 26 to apply to compensation in addition to salary by enacting and adopting an amendment to allow "increased benefits" under specified conditions.
While the payment of health insurance premiums has not been considered by the Wisconsin courts in interpreting article IV, section 26, other states have held such payments to be compensation under their similar constitutional provisions.
 Fringe benefits, such as the payment of group medical and hospital plans, are valuable prerequisites of an office, and are as much a part of the compensations of office as a weekly pay check; such payments for fringe benefits may not constitute "salary," in the strictest sense of the word, but they are compensation.
63A Am.Jur.2d Public Officers and Employees § 450 at 1000 (1984). See also State ex rel. Parsons v. Ferguson,46 Ohio St. 2d 389, 348 N.E.2d 692, 694 (1976) and Opinion by the Justices,249 Ala. 88, 30 So.2d 14, 17 (1947). Having decided that ASLCC payment of health insurance premiums is compensation, I must now determine whether basing the amount of the payment on a salary rate established after terminating employment makes such premium payment "extra compensation" under the constitutional prohibition. I need not consider whether the compensation increase is permitted by the exception in the last sentence of article IV, section 26 which *Page 191 
permits "increased benefits under a retirement system when . . . provided by a three-fourths vote." Assembly bill 91 which upon enactment became the 1991 budget bill, was not passed by a three-fourths vote. See Senate Journal for July 3, 1991, at page 354 and Assembly Journal for July 3, 1991, at page 384.
It is my view that the subject premium payments based on salaries to be determined in the future after the person has left the office are "extra" compensation after the "services shall have been rendered or the contract entered into" and prohibited by article IV, section 26. The statutory change enacted by section 1154Li of the 1991 budget bill states in material part:
Section 40.05(4)(bc) of the statutes is created to read:
 40.05(4)(bc) The accumulated unused sick leave of an eligible employe under s. 40.02(25)(b)6g [any state constitutional officer, member or officer of the legislature, head of a department or state agency who is appointed by the governor with senate confirmation or head of a legislative service agency] shall be converted to credits for the payment of health insurance premiums on behalf of the employe on the date on which the department receives the employe's application for a retirement annuity or for lump sum payment under s. 40.25(1). The employe's unused sick leave shall be converted at the salary rate that the employe would be receiving on the date of the conversion if the employe had continued to be employed in the position described in s. 40.02(25)(b)6g that the employe held immediately before the employe terminated all creditable service or, if the employe is a state elected official who would have been prohibited by law from receiving an increase in compensation during the official's term of office, at the salary rate that would have been payable to the employe on the date of the conversion if the employe had not been prohibited by law from receiving an increase in compensation during his or her term of office. *Page 192 
Under this statutory provision the amount of the ASLCC credit will be determined by salaries to be paid in the future after the affected employe is no longer employed. Because there is no method provided to determine the amount of such ASLCC credit when service is terminated, any increase in such credit after a person is no longer employed violates article IV, section 26.
This is not a situation where compensation is to be determined by a cost-of-living index or some other standard established while the affected individual was still employed. The court inGiessel, 262 Wis. at 56, suggested that article IV, section 26 might not be violated by an employment contract "whereby compensation is governed by a `cost of living' index or some other standard." The majority of states that have considered the issue have held that a change in compensation under application of a pre-legislated formula does not violate state constitution provisions similar to article IV, section 26. Stiftel v.Malarkey, 384 A.2d 9, 16 (Del. 1977).
Benefit rights vest at the time the employment is completed.Giessel, 262 Wis. at 55, 65. While article IV, section 26 does not generally prohibit the increasing of benefits (to be paid after employment) while one is still employed, any such increase to take effect after employment is terminated must be ascertainable by reference to a fixed objective basis in place prior to termination. Absent such fixed objective basis, an increase in compensation violates both the plain wording and historical genesis of article IV, section 26.
Article IV, section 26 provides that "[t]he legislature shall never grant any extra compensation . . . after the services shall have been rendered or the contract entered into." "[A]dditional compensation is extra compensation; — that is, compensation outside of that previously agreed upon." Giessel, 262 Wis. at 55. *Page 193 
As a predecessor stated in 72 Op. Att'y Gen. 45, 49 (1983):
 Under the present constitutional provision any pay adjustments during a term must be clearly provided for in specific amount or be ascertainable by reference to a salary range schedule which was in effect on the date of appointment of such official and which is not subject to discretionary change thereafter. Neither the schedule or plan, or the implementation of the schedule or plan, can be dependent upon the exercise of legislative or administrative discretion during the term. The proposed amendatory language does not meet this test and in my opinion, if enacted, would be violative of article IV, section 26 of the Wisconsin Constitution.
Even though the question there answered related to the article IV, section 26, prohibition against changing the salary of a public officer during his or her term, the rationale is similar to our question. My predecessor properly held that where there are sufficient standards established which preclude the future exercise of legislative or administrative discretion to determine the increase (or decrease), the change effectively occurs when those standards are enacted. Thus the change occurs before and not during the public official's term. In contrast, where the change does not result from objective standards beyond the control of the Legislature, or administrative agencies delegated the compensation setting authority, the change occurs during the term or after employment as the case may be, both prohibited by article IV, section 26. Absent objective standards, the change is prohibited. State ex rel. Sullivan v. Boos, 23 Wis.2d 98, 110,126 N.W.2d 579 (1964).
Section 40.05(4)(bc) as created by section 1154Li of the 1991 budget bill, determines the amount of the ASLCC benefit by basing it on a salary rate determined after the person benefitted is no longer employed. Such prospective salary rate is not based on specific standards but is a result of the myriad of elements *Page 194 
that go into salary establishment. As section 20.923 provides, in part:
 The purpose of this section is to establish a consistent and equitable salary setting mechanism for all elected officials, appointed state agency heads, division administrators and other executive-level unclassified positions. All such positions shall be subject to the same basic salary establishment, implementation, modification, administrative control and application procedures. The salary-setting mechanism contained in this section shall be directed to establishing salaries that are determined on a comprehensive systematic basis, bear equitable relationship to each other and to the salaries of classified service subordinates, and be reviewed and established with the same frequency as those of state employes in the classified service.
 (1) . . . The dollar value of the salary range minimum and maximum for each executive salary group shall be reviewed and established in the same manner as that provided for positions in the classified service under s. 230.12(3).
Section 230.12(3) sets forth the basis for establishing compensation for classified employes by stating:
 The proposal [for compensation plan changes] shall be based upon experience in recruiting for the service, the principle of providing pay equity regardless of gender or race, data collected as to rates of pay for comparable work in other public services and in commercial and industrial establishments, recommendations of agencies and any special studies carried on as to the need for any changes in the compensation plan to cover each year of the biennium. The proposal shall also take proper account of prevailing pay rates, costs and standards of living and the state's employment policies. *Page 195 
Since the basis for determining compensation, set forth in section 230.12(3) appears to contain all of the various elements to be considered in setting salaries generally, such statutory section does not provide the objective standard necessary to satisfy the prohibition of article IV, section 26. Absent the basis for objective certainty in establishing the amount of compensation during employment, such employment contract could change after the service was rendered and the employment terminated. "Such a construction would go far towards surrendering the substantial prohibition [of article IV, section 26] for an uncertain shadow." Carpenter v. The State, 39 Wis. 271,283 (1876).
 The language of the Article admits of no doubt that it was the intent of the draftsmen who prepared it and the electors who adopted it that, when a person rendered public service for compensation agreed upon, his right to compensation depended upon and was limited by his agreement. "The exact measure of his right is determined absolutely by his contract, under the constitution; and there exists nowhere a discretion to vary it." Carpenter v. State (1876), 39 Wis. 271, 283.
Giessel, 262 Wis. at 63-64. Since the elements that go into establishment of compensation are many and under the control of the Legislature or agencies granted the authority by the Legislature, they are not an objective standard. A standard for determining ASLCC premium credits based on future salaries of persons in the same positions precludes interpreting the compensation agreed upon during employment as including these ASLCC premium credits. The accumulated sick leave conversion credit program amendments enacted by 1991 Wisconsin Act 39 therefore violate the first sentence of article IV, section 26.
Your second through sixth questions, as well as an additional question asked by your letter of November 1 , 1991, concern and relate to implementation of the new method of determining *Page 196 
ASLCC benefits. Since I have determined that section 1154Li of the 1991 budget bill, providing this new method, violates the first sentence of article IV, section 26, there is no need to consider questions relating to the implementation of section 1154Li. The prohibition set forth in the first sentence of article IV, section 26 does not distinguish between public officers and employes. Such section precludes payment of extra compensation to "any public officer, agent, servant or contractor, after the services have been rendered or the contract entered into."
Similarly, your seventh and eighth questions ask whether "implementation of this provision [would] violate the rights of others in the trust fund" or violate article IV, section 18, relating to private and local laws. Again there is no need to consider these questions in light of my determination of unconstitutionality.
Your final question states:
 Regardless of your answers to the above questions, what further steps might the Board take to best ensure against any breach of fiduciary duty?
Sections 40.04 and 40.05, as created or amended by sections 1154ky, 1154Li and 1154Lj of the 1991 budget bill, set forth the mechanics of the ASLCC program as follows:
 40.04(10) An accumulated sick leave conversion account shall be maintained within the fund, to which shall be credited all money received under s. 40.05
(4)(b), (bc) and (bm) for health insurance premiums, as dividends or premium credits arising from the operation of health insurance plans and from investment income on any reserves established in the fund for health insurance purposes for retired employes and their surviving dependents. Premium payments to health insurers authorized in s. 40.05(4)(b), (bc) and (bm) shall be charged to this account. *Page 197 
 40.05(4)(bc) The accumulated unused sick leave of an eligible employe under s. 40.02(25)(b) 6g shall be converted to credits for the payment of health insurance premiums on behalf of the employe on the date on which the department receives the employe's application for a retirement annuity or for lump sum payment under s. 40.25(1).
 40.05(4)(br)1. Employers shall pay contributions that shall be sufficient to pay for the present value of the present and future benefits authorized under pars. (b) and (bc). Subject to subd. 2, the board shall annually determine the contribution rate upon certification by the actuary of the department.
. . . .
 2. Beginning in 1985, the initial contribution rate determined under subd. 1 may not exceed the employer's costs under pars. (b) and (bc) for the previous calendar year by more than 0.2% of covered payroll. Each subsequent contribution rate determined under subd. 1 may not exceed the employer's costs under this paragraph for the previous calendar year by more than 0.2% of covered payroll.
"Fund" as used in section 40.04(10) is the public employe trust fund. Secs. 40.01(1) and 40.02(35), Stats. The Employe Trust Funds Board (ETFB) members are trustees of the fund. Sec. 40.01
(2), Stats. In addition, the ETFB has the duty to establish the contribution rate for ASLCC purposes. Sec. 40.05(4)(br), Stats. These duties as trustees of the fund and specifically the establishment of the contribution rate are affected by the question of constitutionality of the changes to the ASLCC program which are the subject of this opinion.
The parameters of the exceptions to the general rule that a state agency or public officer cannot question the constitutionality of a statute were first set forth in the seminal case Fulton Foundation v. Department of Taxation, 13 Wis.2d 1, *Page 198 
11, 14b, 108 N.W.2d 312, 109 N.W.2d 285 (1961). Such parameters were described in State ex rel. Sullivan v. Boos,23 Wis.2d at 100-02, wherein the court stated:
 In Fulton Foundation v. Department of Taxation we said:
 "The general rule is that state agencies or public officers cannot question the constitutionality of a statute unless it is their official duty to do so, or they will be personally affected if they fail to do so and the statute is held invalid."
 We also recognized that there is a further exception where the question raised is of great public concern, particularly where the circumstances are such that there is little likelihood that a taxpayer or other person whose interests are affected would take the steps required to get a determination of the question.
 In deciding that a particular officer could raise the constitutional question, this court has readily found in statutory language an implication of duty to determine the lawfulness of the act or expenditure. Thus in mandamus actions to compel the state director of budget and accounts to make disbursements, the director was permitted to challenge constitutionality because his statutory duties were deemed to include passing on the legality of the purpose of the expenditure.
. . . .
 Courts frequently permit an officer who controls the disbursement of public funds to challenge the validity of a statute or ordinance which appears to require payment, upon the theory that he has a personal interest to protect, in that he may be held liable if he permits the disbursement of public funds in what proves to be an unlawful manner. *Page 199 
In State ex rel. Singer v. Boos, 44 Wis.2d 374, 171 N.W.2d 307
(1969), the governing body of the Annuity Pension Board of the Employes' Retirement System of the county of Milwaukee (Milwaukee Board) challenged the constitutionality of a home rule ordinance increasing benefits to retired members. The Milwaukee Board alleged that increasing benefits to persons already retired violated article IV, section 26 and authorized the expenditure of public funds for private purposes. In applying the Fulton
exceptions, the court stated:
 As we view this case, the fundamental question to be resolved is whether public funds are being diverted for a private purpose. This is a question of great public concern and interest.
 "When we apply the test of great public concern to the two issues of unconstitutionality raised by the department in the instant case we find one falls within such category and one does not. The issue of whether public funds are being diverted to a private purpose clearly is a matter of great public interest. . . ." Fulton Foundation v. Department of Taxation (1961), 13 Wis.2d 1, 13, 108 N.W.2d 312, 109 N.W.2d 285.
 In addition, the issues raised by appellants will probably not be raised by an individual taxpayer, since the expense and trouble would be too great. In this connection, this court has held:
 "We also recognized that there is a further exception where the question raised is of great public concern, particularly where the circumstances are such that there is little likelihood that a taxpayer or other person whose interests are affected would take the steps required to get a determination of the question." State ex rel. Sullivan v. Boos, supra, 101. *Page 200 
 Therefore, we determine that the appellants have standing to raise the issues presented in this case.
Boos, 44 Wis.2d at 379-80.
It therefore appears that the ETFB has the standing to contest the constitutionality of the ASLCC program changes. It has standing since it has the statutory duty to establish the employers' ASLCC contribution rate and because diversion of public funds for a private purpose is a question of great public concern or interest which will probably not be raised by an individual taxpayer.
JED:WMS *Page 201