STATE EX REL. SACHTJEN, County Judge, Plaintiff, v. FESTGE, County Clerk, Defendant.

*August 31—October 6, 1964.*

130

For the plaintiff there were briefs by *La Follette, Sinykin, Doyle & Anderson,* attorneys, and *Gordon Sinykin* and *Shirley S. Abrahamson* of counsel, all of Madison, and oral argument by *Gordon Sinykin.*

For the defendant there was a brief by *Michael B. Torphy, Jr.,* district attorney of Dane county, *William F. Lorenz, Jr.,* deputy district attorney, and *William C. Lengacher,* assistant district attorney, and oral argument by *Mr. Lorenz.*

Briefs *amici curiae* were filed by *H. E. Koehler, Frederic C. Eberlein, Lloyd G. Andrews,* and *Steve Aschenbrener,* all of Shawano, for the Shawano County Bar Association, and by *E. L. Wingert* of Madison, for the Board of Circuit Court Judges.

FAIRCHILD, J. The legislature has, effective with court reorganization, fixed a uniform basic salary for every county judge in the state.[3] Sec. 253.07 (2), Stats., permits each county to supplement the uniform salary as follows:

"The county may pay each county judge compensation in addition to that specified in s. 20.930 but such additional compensation shall be the same for each such judge and the total salary of the county judge cannot be more than the total salary of the highest paid circuit judge for the county."

The county board of Dane county, in voting the $100 per month here involved, was acting pursuant to the statute just quoted. It contains nothing to require that increases shall await new terms of office.

Another statute, sec. 59.15 (1), Stats., provides that the county board shall establish, prior to the earliest date for filing nomination papers, the total compensation for elective officers paid in whole or in part from the county treasury, and that such compensation shall not be increased or diminished during the officer's term. This statute, however, (if applicable to county judges) was superseded, for a period beginning February 27, 1951, and extended from time to time to December 31, 1963, by the Emergency Salary Adjustment Act.[4]

---

[3] Sec. 20.930, Stats.

[4] Sec. 66.195, Stats. 1961.

Thus the county board of Dane county had statutory authority to grant the $100 monthly increase to relator during his current term unless sec. 26, art. IV of the constitution prevented.

The first sentence of sec. 26, art. IV, Wis. Const., provides:

"The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into; *nor shall the compensation of any public officer be increased or diminished during his term of office. . . .*"

We are concerned in this case with the portion which we have italicized above.

The primary question posed in this case is whether a judge of a county court, with the powers and attributes enjoyed since court reorganization, is the type of "public officer" to which sec. 26, art. IV, Wis. Const., applies. If he be such type, the question would follow whether the section applies to his compensation out of county funds as well as state funds.

It is clear that in many contexts "public officer" would include a judge of a county court as well as a justice of the supreme court, a judge of a circuit court, or a justice of the peace. Any one of them would fulfil the broad definition of "public officer" approved by this court in a different context.[5] So would a number of county and municipal officers.

It will be seen, however, that the term "public officer" as used in sec. 26, art. IV, Wis. Const., has not been deemed to

[5] *Martin v. Smith* (1941), 239 Wis. 314, 332, 1 N. W. (2d) 163. See also *State ex rel. Zimmerman v. Dammann* (1930), 201 Wis. 84, 98, 228 N. W. 593; 35 Words & Phrases (perm. ed.), p. 354. See also *United States ex rel. Boyd v. Lockwood* (1843), 1 Pin. (Wis.) 359, 363, in which the territorial supreme court held that the office of judge of probate was an office "where, for the time being, a portion of the sovereignty, legislative, executive or judicial, attaches, to be exercised for the public benefit."

include every officer who fulfils the broad definition of the term, and that by consistent exclusion of officers of primarily local responsibility, "public officer" in sec. 26 has been interpreted virtually as if it read "state public officer." Indeed this court has, in three decisions on the subject, used the term "state officer." [6]

1. *Proposed exclusion of all judges from sec. 26, art. IV, Wis. Const.* As previously stated, our question is whether a judge of a present-day county court is the type of "public officer" to which sec. 26, art. IV, applies. Relator has urged us to answer the question by deciding that "public officer" in that section was not meant to refer to any justice or judge.

Relator concedes that in order to adopt his position it would be necessary to modify or overrule prior decisions.[7] He argues, however, that the restraint of sec. 26, art. IV, Wis. Const., has in significant instances become an impediment to good government; that change via the amending process is an uphill struggle because of the difficulty of discussing the merits with the public; that this court has found no violation of sec. 26, art. IV, in the legislature abolishing *statutory* state offices, re-creating them for new terms, and providing a higher salary for the new terms; [8] that the term "public officer" is of vague and variant import, depending upon the connection in which it is used; [9] that this court has declared that judicially adopted doctrines may be changed by the judicial process which created them; that justices and judges have ten and six-year terms, and the trend of the

---

[6] *Rooney v. Supervisors of Milwaukee County* (1876), 40 Wis. 23, 26; *Petition of Breidenbach* (1934), 214 Wis. 54, 58, 252 N. W. 366; *State ex rel. Sullivan v. Boos* (1964), 23 Wis. (2d) 98, 112, 126 N. W. (2d) 579.

[7] *State ex rel. Sullivan v. Boos, supra,* footnote 6, and several decisions therein cited.

[8] *State ex rel. Reuss v. Giessel* (1952), 260 Wis. 524, 51 N. W. (2d) 547.

[9] 42 Am. Jur., Public Officers, p. 879, sec. 2.

cost of living has made fixed salaries a severe economic hardship; that sec. 26 is in art. IV, dealing with the legislature rather than in art. VII, dealing with the judiciary.

Nine months ago, we had before us the *Sullivan Case,* involving the validity of a midterm increase paid out of county funds to a judge of a circuit court.[10] Although both parties there had assumed the proposition that a judge of a circuit court was the type of "public officer" to which sec. 26, art. IV, Wis. Const., applies, we considered whether he was or not, and decided that he was. We said, with one justice dissenting and two not participating, that, "If there could have been any question whether the term 'public officer' in sec. 26, art. IV, includes a justice or a circuit judge, almost universal practical construction has settled it." [11] We have reviewed the question.

Turning to the constitution as adopted in 1848, it seems to us that the most natural construction of the term "public officer" as used in sec. 26 of art. IV, Wis. Const., would include judges. The office of judge meets almost any pertinent definition of a public office, and in order to hold that "public officer" did not mean judge, it would seem necessary to find some provision within the document, or some circumstances at the time of adoption which would lead to that conclusion.

This court, in 1867, found in the customary practice of remuneration of local officers on a fee basis a reason for limiting the meaning of "public officer" in sec. 26, art. IV, Wis. Const., to "those salaried officers paid by the state." [12] The fact that there was a basis in those years shortly after adoption of the constitution, for a judicial interpretation narrowing the meaning of "public officer" by excluding local

[10] *State ex rel. Sullivan v. Boos, supra,* footnote 6.

[11] Id., p. 106.

[12] *Board of Supervisors v. Hackett* (1867), 21 Wis. 620, 625 (*613, *618).

officers by no means demonstrates that there were circumstances in the light of which we could, in 1964, exclude justices and judges of circuit courts. Incidentally, the author of the 1867 opinion was Mr. Chief Justice DIXON. In the same year he resigned and was reappointed, and the next year faced bitter criticism in a campaign for election, all in order to enjoy a salary increase (from $2,500 to $3,500) for which he would otherwise have had to wait two years.[13] His actions indicate that the thought that a justice of the supreme court was not a "public officer" never crossed his mind.

We find nothing within the constitution to suggest that justices and circuit judges were excluded from "public officers." Leaving aside the local officers mentioned in the constitution, there remain only the following, to whom it could have had application:

1. The secretary of state, treasurer, and attorney general, they enjoying two-year terms under art. VI, Wis. Const.

2. The judges of the circuit and supreme courts, enjoying six-year terms under art. VII. Initially the judges of the circuit courts were also judges of the supreme court, with power in the legislature later to organize a separate supreme court. (The constitution, art. VII, also provided for judges of probate and justices of the peace and authorized the establishment of municipal courts and inferior courts. All these latter have been treated before 1962 as not being state public officers under sec. 26.)

3. The state superintendent of public instruction, enjoying a four-year term under art. X, Wis. Const.

4. "Officers whose offices may hereafter be created by law, . . ." Sec. 9, art. XIII, Wis. Const.

We find nothing within the document on the basis of which to exclude the judges from the term "public officer." The location of sec. 26 in art. IV, Wis. Const., does not

[13] Winslow, Story of a Great Court, p. 250.

suggest such exclusion. Sec. 26 is in terms a limitation upon the power of the legislature over the compensation to be paid to the various public officers and applied to public officers provided for in other articles. Sec. 26 originally had no possible effect on the compensation of the members of the legislature, the governor, and the lieutenant governor in his capacity as president of the senate. Their compensation was expressly fixed, changeable only by amendment.[14] When the constitution was ultimately amended in 1929, so that it no longer prescribed the compensation of members of the legislature, the question arose whether members of the legislature were "public officers" under sec. 26. This court held that they were, and in reasoning the matter left no doubt that this court considered justices and circuit judges to be such "public officers."[15] Reference was made to the separation of powers in the three primary branches of government and the preservation of each by a system of checks and balances. "That the term *public officers* was at the time of the adoption of the constitution generally understood to include members of the legislature as well as members of other coordinate branches of the government can scarcely be doubted."[16]

In considering the meaning of "public officer" in sec. 26, art. IV, Wis. Const., we also note that the section prohibits diminution as well as increase of compensation. It was doubtless intended to protect public officers from reprisals as well as to prevent improper rewards. Its purposes would be considered important with respect to judges as well as others. It is true that the rising price level has usually made sec. 26 a burden to public officers, and more so to justices and judges, but we think the construction must be made in the

---

[14] Sec. 21, art. IV, sec. 5, art. V, and sec. 9, art. V, Wis. Const.
[15] *State ex rel. Zimmerman v. Dammann, supra,* footnote 5.
[16] Id., p. 97.

light of the intended purpose. So viewed, the longer terms of the judges provide no basis for concluding that the constitution makers did not intend sec. 26 to apply to them.

In the *Sullivan Case* we cited opinions of this court which have stated in passing or have implied that justices and judges of the circuit courts are "public officers" under sec. 26, art. IV, Wis. Const. The fact that this question has never really been in issue in any case is doubtless an indication that no interested person ever thought there was any question about it.

Justices and circuit judges appear to have accepted the proposition that they were "public officers" and to have lived by it for one hundred years. Reference has been made to the resignation and reappointment in 1867 of Mr. Chief Justice DIXON in order to avoid the restriction of sec. 26 of art. IV, Wis. Const., and begin immediately to receive an increase from $2,500 to $3,500. Mr. Chief Justice WINSLOW became a member of this court in 1891, being appointed to fill a vacancy. He was elected to full terms, beginning in 1896, 1906, and 1916. He died in 1920. His initial salary was $5,000 per year. An increase of $1,000, enacted in 1901, did not reach him until 1906. An increase of $1,500 was enacted in 1911, but he did not receive it until 1916. An increase of $1,000 was enacted in 1919, but he never received it. He published his "Story of a Great Court" in 1912, and in relating the Dixon incident, said: "Under the constitutional provision forbidding any increase or diminution of the compensation of any public officer 'during his term of office' the act [increasing the salary of a justice] could not have been made applicable to persons holding office at the time of its passage during their existing terms." In a footnote he cited sec. 26 of art. IV. He was chief justice when the court decided *State ex rel. Bashford v. Frear,*[17] *Milwau-*

[17] (1909), 138 Wis. 536, 120 N. W. 216.

*kee County v. Halsey,*[18] and *State ex rel. Wickham v. Nygaard* [19] in each of which the opinion either assumed or stated that justices or circuit judges are "public officers" under sec. 26.

The salary provided for justices of the supreme court when the separate supreme court was established was $2,000 per year.[20] The legislature has enacted 12 increases in that salary, the first having occurred in 1857.[21] The salary for judges of the circuit court originally provided was $1,500 per year and the legislature has enacted 13 increases in that state salary.[22] Ch. 102, Laws of 1857, which enacted the first increases for both, provided:

"The salaries of the Judges of the Supreme and Circuit Courts in this State, who shall be hereafter elected or appointed, and whose term of office shall commence after the passage of this act, shall be two thousand five hundred dollars each; such salaries shall be payable quarterly in the same manner that the salaries of Judges of the Circuit Court are now payable; *Provided,* That this act shall not be construed to apply to nor to increase the compensation of the Judge of any Circuit now in office during his term of office.

"All acts and parts of acts conflicting with this act, except so far as the same may be applicable to the salaries of such Judges as are now in office, are hereby repealed."

[18] (1912), 149 Wis. 82, 136 N. W. 139.

[19] (1915), 159 Wis. 396, 150 N. W. 513.

[20] Ch. 395, sec. 6, Laws of 1852.

[21] Ch. 102, Laws of 1857; ch. 33, Laws of 1867; ch. 145, Laws of 1868; ch. 293, Laws of 1873; ch. 138, Laws of 1901; ch. 508, Laws of 1911; ch. 422, Laws of 1919; ch. 161, Laws of 1927; ch. 405, Laws of 1949; ch. 418, Laws of 1955; ch. 633, Laws of 1957; ch. 225, sec. 30, Laws of 1963.

[22] P. 265, Laws of 1848; ch. 102, Laws of 1957; ch. 65, Laws of 1873; ch. 246, Laws of 1885; ch. 138, Laws of 1901; ch. 520, Laws of 1905; ch. 592, sec. 21, Laws of 1913; ch. 238, Laws of 1919; ch. 440, Laws of 1927; ch. 186, Laws of 1947; ch. 97, sec 27, Laws of 1951; ch. 418, Laws of 1955; ch. 557, Laws of 1959; ch. 225, sec. 30, Laws of 1963.

Every later statute providing for increase expressly provided that it would affect only the terms beginning after the date of passage or after some date specified by the legislature approximately at the time of passage.

In 1957 an effort was made to amend sec. 26 of art. IV, Wis. Const., so that whenever an increase in salary became effective as to one justice of the supreme court, judge of a circuit court, or member of a commission, it could go into effect as to all other justices, judges, or members of the commission.[23] This proposal was approved by only one house but those who supported it undoubtedly believed that sec. 26 was applicable to justices and judges. In 1961 after approval by two legislatures, an amendment was submitted to the people which would have permitted midterm increases for all officers whose term was four years or more except for members of the senate. This amendment was rejected by the people.[24] While it did not in terms refer to justices and judges, it is reasonable to believe that it was proposed with them in mind as well as the superintendent of public instruction and statutory officers whose terms are four years or more. In 1963 after approval by two legislatures, an amendment was submitted to the people which would have permitted the legislature to increase the compensation of justices of the supreme court and judges of other courts. It also was rejected.[25] Those who supported it, however, evidently felt that sec. 26 applies to justices and judges and that its prohibition against diminishing compensation during a term would remain in effect as to justices and judges if the amendment were to pass.

Counsel has laid stress upon the changing circumstances in our society, economic situation, and government since 1848. Sec. 26 of art. IV, Wis. Const., as applied to justices

---

[23] Jt. Res. 30, A., 1957 session.

[24] Jt. Res. 11, 1961 session.

[25] Jt. Res. No. 7, 1963 session.

of the supreme court has been made more onerous than it was originally by the increase in the length of terms of justices from six years to ten. The amendment so providing, however, was adopted in 1877, at a time when the legislature and the justices had apparently been assuming for at least twenty years that sec. 26 applied to justices and after there had been considerable public debate about the maneuver executed by Mr. Chief Justice DIXON.

The fact that a rising price level (and recently a rapidly rising one) has made sec. 26, art. IV, Wis. Const., a type of burden that was not originally intended, and particularly onerous to those with long terms, is certainly an argument for change by amendment, but we find it no argument at all for saying that the words "public officer" in the constitution, either in 1848 or in 1877, did not include justices of the supreme court and judges of the circuit courts.

We recognize, of course, that many provisions in a constitution must be interpreted in the light of changing social conditions and circumstances and the emergence of new problems. Illustrations are readily found in the broad concepts which are put into words as "due process of law," "equal protection of the laws," and "power . . . to regulate commerce with foreign nations and among the several states" found in the federal constitution. This court has recently devised a remedy within the judicial power in order to redistrict the legislature notwithstanding the earlier thinking that unless the express formula in the constitution produced redistricting, no remedy existed.[26]

Nevertheless, we are dealing in the present case with the meaning of a term, "public officer," which seems clearly intended to have a definite meaning with respect to the types of officers provided for elsewhere in the constitution. The office of judge of the circuit court was expressly established

[26] *State ex rel. Reynolds v. Zimmerman* (1964), 22 Wis. (2d) 544, particularly at pages 563, 564, 126 N. W. (2d) 551.

by the constitution and the office of justice of a separate supreme court was expressly provided for although the establishment of the separate supreme court by the legislature was to be delayed for five years. It does not seem to us that this is a proper area in which to consider changing circumstances and other matters which may well bear upon the desirability of the particular provision. We are not persuaded by the argument that the relationship between the term "public officer" in sec. 26 of art. IV, Wis. Const., and the office of circuit judge and the office of justice of the supreme court dealt with in art. VII can change with the times.

In our view the evidence is overwhelming that in 1848 "public officer" in sec. 26 of art. IV, Wis. Const., meant a judge of the circuit court and also meant a justice of the supreme court whenever such separate court might be established and that the meaning includes the same officers today.

Accordingly we are unable to reach the answer that a county judge is exempt from sec. 26 of art. IV, Wis. Const., on the theory that all judges are exempt.

2. *Has court reorganization brought county judges under sec. 26, art. IV, Wis. Const.?* In 1880 this court decided in *State ex rel. Martin v. Kalb* [27] that sec. 26, art. IV, did not apply to the judge of a county court. The statute then being considered by the court reduced the compensation of a county judge during his term. It was held to be constitutional. Although the court took notice that the general statute authorizing county boards to fix the salaries of county officers, including county judges, provided that such salaries not be increased or diminished during a term of office, the court deemed this a choice made by the legislature, which the constitution did not require.

This decision was reached notwithstanding counsel's argument that county courts are courts of record, with jurisdic-

---

[27] (1880), 50 Wis. 178, 6 N. W. 557.

tion coextensive with the state; their services are as much for the benefit of the public as are those of the supreme or circuit courts; and the three courts are part of a single system constituting the judicial department of the state.

In *Martin,* the court relied on *Board of Supervisors v. Hackett,*[28] which it summarized as "limiting the constitutional restriction as to the compensation of public officers to such officers as receive their compensation out of the state treasury." Portions of the *Hackett* opinion quoted with emphasis were "such officers as receive a fixed salary payable out of the public treasury of the state" and "those salaried officers paid by the state." Thus *Martin,* taken literally, does not wholly settle our present case because, since court reorganization, relator and all other county judges outside Milwaukee county do receive a fixed salary payable initially out of the state treasury, although a portion is ultimately borne by the counties. County judges in Milwaukee county receive their salary directly from the county treasury, but a portion is ultimately borne by the state.

The question presented is whether the changes in the county courts wrought by court reorganization, either in the courts themselves or in the arrangements for compensation, have now brought county judges into the class of public officers whose salaries are governed by sec. 26, art. IV, Wis. Const.

It is appropriate to consider the status of the county courts in the constitutional framework, and, in general terms, the changes effected by court reorganization.

County courts are statutory courts. The constitution did not create them nor require the legislature to do so. Sec. 2 of art. VII, Wis. Const., empowered the legislature "to establish inferior courts in the several counties, with limited civil and criminal jurisdiction." This is the general authori-

---

[28] *Supra,* footnote 12.

ty for the creation of the county courts, as well as for numerous other inferior courts, with varying names and powers, created from time to time before court reorganization. The legislature may alter or abolish such courts, as well as create them.[28a]

Sec. 14 of art. VII, Wis. Const., required the election of a judge of probate in each county, but empowered the legislature to abolish that office in any county and confer probate powers upon such inferior courts as might be established in that county. The legislature promptly exercised this option. It established a county court in every county on January 1, 1850, abolished the office of probate judge, and conferred probate powers on the county courts.[29]

Up to the time of court reorganization, effective January 2, 1962, statutes were enacted from time to time not only modifying the jurisdiction conferred generally upon county courts, but altering the jurisdiction of county courts in particular counties. Other inferior courts were created from time to time with wide variations in jurisdiction and procedure. The resulting lack of uniformity in a complicated court system provided the impetus for court reorganization.[30]

County judges, at first, were allowed specified fees for services, some to be paid by litigants and some by the coun-

[28a] *State ex rel. Martin v. Kalb, supra,* footnote 27, p. 188. See also *State ex rel. Smith v. Outagamie County* (1921), 175 Wis. 253, 263, 185 N. W. 184, and *State ex rel. Reuss v. Giessel, supra,* footnote 8, p. 529.

[29] Ch. 86, R. S. 1849.

[30] For a discussion of the history of the county courts and special courts, see *Estate of George* (1937), 225 Wis. 251, 259–261, 270 N. W. 538, 274 N. W. 294; 1906 Op. Atty. Gen. (1905), 527; 1937 Blue Book, pp. 677–679; 1946 Blue Book, pp. 399–401; 1950 Blue Book, pp. 423–427; 1960 Blue Book, pp. 478–483; 1962 Blue Book, pp. 550, 551; Karlen and Martinson, Statutory Courts in Wisconsin, 1949 Wisconsin Law Review, 207; Karlen, Constitutional and Statutory Courts, 1949 Wisconsin Law Review, 706; and Hallows and De Witt, The Need for Court Organization, 1954 Wisconsin Law Review, 376.

ty.[31] Later, salaries were authorized, generally to be fixed by the county board [32] and, at times, fixed by the legislature.[33] The amounts were not uniform, but before court reorganization, all were paid out of county funds. The situation was similar with respect to the various other inferior courts.

Court reorganization produced a system in which there are but two trial courts of record, circuit courts and county courts. It was deemed necessary to retain at least one type of inferior court on which to confer probate powers under sec. 14 of art. VII, Wis. Const. A substantial degree of uniformity was achieved with respect to county court jurisdiction and a basic salary was set, the same for every county judge. It was set substantially above the figure formerly paid in many counties,[34] and the county judge was prohibited from practicing law.[35]

There is a separate county court in every county, except that Shawano and Menominee counties are joined in a single district, with one county court.[36] Florence and Forest counties are combined for the purpose of electing one judge to

[31] Ch. 131, secs. 5, 6, and 7, R. S. 1849.

[32] Ch. 121, Laws of 1868.

[33] *E.g.,* ch. 98, Laws of 1877.

[34] The salary of the county judges of every county having a population of less than 40,000 was increased by the establishment of the basic salary by court reorganization. The same is true of the salaries of county judges in 13 counties with populations in excess of 40,000. The basic salary was the same as the salaries of county judges in four counties and was less than the salaries paid to county judges in five counties, but each of the latter counties have voted additional compensation to their county judges so that the total compensation received by those judges is equal to or greater than the compensation received before court reorganization. See 1961 Report of the Judicial Council, pp. G–18–G 20; statistics of Judicial Council as to 1962 salaries of county judges.

[35] Ch. 495, sec. 116, Laws 1961; sec. 256.22, Stats.

[36] Sec. 253.015, Stats.

serve the county courts of both counties.[37] The county courts have limited civil and criminal jurisdiction, and, although they are more nearly uniform throughout the state than before court reorganization, they plainly remain, in constitutional terms, "inferior courts in the several counties, with limited civil and criminal jurisdiction" and with probate powers.

County court jurisdiction is uniform in every county except Milwaukee county. The criminal jurisdiction, outside Milwaukee, is concurrent with that of the circuit courts, except for treason. In Milwaukee county, the county court has trial jurisdiction over misdemeanors and offenses where the punishment does not exceed one year's imprisonment or a fine not exceeding $1,000, or both.[38] The county court of Milwaukee county does not have jurisdiction of actions affecting marriage. With that exception in Milwaukee, every county court has jurisdiction in civil matters concurrent with the circuit court except actions for damages in which more than $100,000 is demanded.[39]

In some counties, the present county courts have greater jurisdiction than the county courts or other inferior courts had before court reorganization. In other counties the present county courts have less.

Before court reorganization a county judge could upon request, preside over the county court of another county.[40] Since court reorganization, he may, upon request, and shall, upon assignment by the chief justice, preside temporarily over a circuit court as well as another county court. We have held that a county judge may, under the statute, validly

---

[37] Sec. 253.05, Stats.

[38] Sec. 253.12, Stats.

[39] Sec. 253.11, Stats.; the amount was raised from $25,000 by ch. 88, Laws of 1963.

[40] Sec. 253.11, Stats. 1959.

act as a temporary circuit judge if he meets the constitutional qualifications of a circuit judge.[41]

The county judges still have, after court reorganization, a number of administrative powers and duties. Presumably the legislature gave those powers to county judges because in almost all counties there is at least one county judge. Illustrations are: He may order a child sent to a school or class for the visually handicapped or deaf.[42] He may act on the board of county canvassers if the county clerk is unable to act or if his office is vacant.[43] He acts upon applications for treatment at certain public hospitals.[44] In certain counties he may continue to administer public assistance programs.[45]

Although court reorganization has achieved a high degree of uniformity, in county court jurisdiction, statewide, county courts remain, as before "inferior courts in the several counties," created by statute, and subject to change or abolition by the legislature at will.

Under court reorganization as originally enacted, the legislature set a basic annual salary for every county judge of $12,000,[46] and authorized each county board to supplement it.[47] In counties outside Milwaukee the judge received his $12,000 basic salary from the state and the counties were required to reimburse the state for one half. Milwaukee county was required to pay the basic salary to the judges of its county court, and the state was to reimburse it for one half.[48] In 1963, the legislature increased the basic salary

[41] *State ex rel. McCormack v. Foley* (1962), 18 Wis. (2d) 274, 281, 118 N. W. (2d) 211.
[42] Sec. 41.74, Stats.
[43] Sec. 6.61, Stats.
[44] Sec. 142.03, Stats.
[45] Sec. 46.22 (1), Stats.
[46] Sec. 20.930 (1) (a), Stats. 1961.
[47] Sec. 253.07 (2), Stats.
[48] Sec. 253.07 (1), Stats.

for every county judge to $13,500, adjusting the reimbursement procedure so that out of this amount each county ultimately bears $6,000 and the state $7,500.[49] As before, each county may pay a supplemental amount, determined by the county board.

It is clear that the legislature did not intend, by court reorganization, to bring county judges within the type of public officer to which sec. 26, art. IV, Wis. Const., is applicable. Sec. 253.07 (2), Stats., authorizing counties to pay supplemental compensation to county judges, contains no restriction against increasing or decreasing the compensation during the term. Sec. 256.02 (4) prohibits the county board from reducing the salary of a county judge during his term, but does not prohibit increases. Sec. 253.15 (1), Stats. 1959, prohibiting increases or decreases in the salary of a county judge during his term, was repealed.[50] The restrictions of sec. 59.15 (1) (a), if applicable, were suspended by sec. 66.195. In addition, sec. 253.07 (2) authorizing the supplemental salary from the county provides that it "shall be the same for each such judge, . . ." This requirement would often be frustrated if changes in salary could not become effective for every county judge in one county at the same time.

It is true that this court, in *State ex rel. Martin v. Kalb*,[51] in holding that the county judge was not a (state) public officer subject to sec. 26 of art. IV, Wis. Const., laid stress upon the fact that the county judge then drew his salary from the county and not the state. Under court reorganization, the payment of the basic salary of the county judge is shared by state and county. We do not view this change in the source of compensation as controlling. The fact that in 1880, and up to court reorganization, the salary of a

[49] Ch. 225, Laws of 1963.
[50] Ch. 315, sec. 13, Laws of 1959.
[51] *Supra,* footnote 27.

county judge came from the county treasury demonstrated conclusively that he was primarily a local rather than a state officer. His status remains very much the same, although some of his compensation now originates with the state.

Had the legislature set the basic salary as it did and required every county to pay it out of county funds, sec. 26 of art. IV, Wis. Const., would have been clearly inapplicable under the *Martin* decision. Three of the guideposts set by the legislature for the benefit of the judicial council in formulating a plan of court reorganization were: "To have judicial salaries set by the legislature. . . . To eliminate part-time judges and judges on a fee basis. . . . To give each county a full time resident judge." [52] It may be inferred that it was thought necessary to provide a $12,000 basic salary in order to make it feasible to prohibit county judges from outside law practice, but politically impossible to enact court reorganization if all counties were compelled to pay that much. Many counties paid considerably less for part-time service.

The legislature accordingly provided for salaries to be shared by state and county treasuries.[53] This aspect is emphasized by the characterization of the state's payment as "aids." In the 1961 state budget, the appropriation for the salaries and expenses of judges, reporters and assistant reporters of the county courts was referred to as "County courts, state aid" [54] and in the 1963 state budget as "County courts . . . Aids to localities." [55]

---

[52] Jt. Res. 112, A., 1957 session.

[53] The notes of the Judicial Council with respect to the court reorganization act provide: "Because the judges will be on call throughout the state, one-half of their salary will be paid by the state. The other half will be charged back to the county." See notes appended to Bill No. 282, S. (1959), p. 24, as reprinted in 29 W. S. A., ch. 253 (1964 pocket part, p. 55).

[54] Sec. 20.005 (2) (a), line 99, Stats. 1961.

[55] Sec. 20.005 (2) (a), lines 105 and 106, Stats. 1963.

It would seem most illogical to say that by enacting the salary arrangement, the legislature had destroyed its own power to change it at any time in the future it saw fit. Relator, like many other judges, had begun a term of office before court reorganization. His term continued, though his court was converted into a branch of the county court, with different powers and compensation. The legislature similarly increased the salary of many judges of county and other inferior courts during their terms. Surely the legislature retained its power to modify or destroy the county courts, or to convert them back to the attributes they had before. Can it be said, nevertheless, that because of the method of compensation chosen, the legislature imposed the restriction of sec. 26, art. IV, Wis. Const., upon its power to alter compensation?

As shown above, the legislature intended that the county boards be free to increase the compensation of county judges without waiting for the beginning of a new term. We are to presume that all legislative acts are constitutional unless it appears that they are unconstitutional beyond a reasonable doubt.[56]

We conclude that notwithstanding the contribution by the state of a share of the basic salary of county judges, their office has not sufficiently changed in character from a local to a state office to bring county judges within the class of public officer to which sec. 26 of art. IV, Wis. Const., applies. It follows that the legislature is free to raise or lower the salary of county judges during their terms and to authorize the county boards to raise or lower, midterm, the supplemental salary paid by the county. To hold otherwise would be to apply a constitutional restriction on legislative power in a doubtful case.

[56] *State ex rel. McCormack v. Foley, supra,* footnote 41, p. 279.

*By the Court.*—It is ordered, that a peremptory writ of mandamus issue commanding the county clerk of Dane county to approve and authorize payment to relator of the $100 monthly increase involved in this action.

HALLOWS, J. (*concurring in the result*). I concur in the result that sec. 26, art. IV of the Wisconsin constitution does not prohibit a county from granting an increase in compensation to a county judge during his term of office payable out of the county treasury pursuant to secs. 253.07 (2) and 66.195, Stats. But, I arrive at this conclusion not on the broad ground that county judges are not public officers within the meaning of sec. 26 but on the narrower ground the increase in their compensation was neither determined by the legislature nor paid out of the state treasury. I believe county judges are public officers and to the extent their basic salary is fixed by the legislature and paid out of the state treasury, either directly or indirectly, such salary is subject to the constitutional restriction of sec. 26.

I agree with the majority opinion in its re-examination of the question whether the compensation of circuit judges and justices of this court come within the ambit of sec. 26, art. IV, and with its conclusion. In reaffirming *State ex rel. Sullivan v. Boos* (1964), 23 Wis. (2d) 98, 126 N. W. (2d) 579, this court correctly decided the issue presented. Although this court is committed to the proposition it has the power under the doctrine of *stare decisis* to modify and even overrule a court-made doctrine, *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105, that power should not be exercised unless there exists a more compelling reason than that the end justifies the means.

Desirable as equal salaries for equal work and midterm increases are for the judiciary, this court should not by ju-

dicial interpretation to attain such result overthrow the time-accepted precedents construing the constitution. Twice an appeal has been made to the people of this state to amend the constitution to eliminate the cause of the inequality of compensation within the same classification of judicial officers and unfortunately on both occasions the proposals were rejected. It would ill behoove this court by judicial construction now to reach a result which the people of this state have expressed a desire should continue. The solution lies in another appeal to the voters to change the constitution, not in a changed construction of it by this court.

Prior to court reorganization the compensation of county judges was not subject to sec. 26 because in some cases their compensation consisted of fees and not of a fixed salary and came under the rule of the *Hackett Case*,[1] or if a fixed salary it was not paid out of the state treasury as required by the *Kalb*[2] and the *Rooney Cases*.[3] However, as part of and since court reorganization the basic salaries of judges outside of Milwaukee county have been determined and been paid by the state with a part thereof charged back to the county. In Milwaukee county the same result is reached indirectly by having Milwaukee county pay the salaries with a partial reimbursement by the state. The reason for this difference was to make it possible for the county judges in Milwaukee county to continue to qualify under the Milwaukee county pension system.

To my mind there is no question a county judge is a public officer. In *State ex rel. Zimmerman v. Dammann* (1930), 201 Wis. 84, 228 N. W. 593, the term "public officer" as used in sec. 26, art. IV, was defined as having attributes of continuous and permanent duties, a definite term, an oath

[1] *Board of Supervisors v. Hackett* (1867), 21 Wis. 620 (*613).
[2] *State ex rel. Martin v. Kalb* (1880), 50 Wis. 178, 6 N. W. 557.
[3] *Rooney v. Supervisors of Milwaukee County* (1876), 40 Wis. 23.

of office, the exercise of some portion of the sovereign power of the state in which the public has a concern. The office of county judge fulfils these requirements. Under court reorganization, county judges (outside Milwaukee county) have for all practical purposes the same jurisdiction as circuit judges with the exception of treason in the criminal field and cases involving over $100,000 in the civil field. This court has held county judges may sit under some circumstances as circuit judges. *State ex rel. McCormack v. Foley* (1962), 18 Wis. (2d) 274, 118 N. W. (2d) 211. The salary of county judges is determined by the legislature and the employer's cost of their pension on their basic salary is paid by the state, sec. 66.89, Stats. I cannot agree with the majority that county judges are by the nature of their office not to be considered public officers under sec. 26 because they are not state officers.

It is true in several opinions [4] of this court the term "public officer" in reference to sec. 26 was used interchangeably with "state officer" but it was not held virtually or otherwise in those cases that a public officer meant only a state officer. The term "public officers" is used in sec. 26 without qualification or restriction. Sec. 26, art. IV, providing "the legislature . . . nor shall the compensation of any public officer be increased or diminished during his term of office" was a restriction on the legislature in its custodianship of state funds and includes within its benefits and disadvantages all public officers who receive their compensation from the state's purse. By reason of the court reorganization county judges come under sec. 26, art. IV, the same as the legislators did when the constitution was amended to grant the legislature the power to fix the compensation of its members. *State ex rel. Zimmerman v. Dammann, supra.*

---

[4] *Rooney v. Supervisors of Milwaukee County, supra; Petition of Breidenbach* (1934), 214 Wis. 54, 252 N. W. 366; *State ex rel. Sullivan v. Boos, supra.*

The public policy of sec. 26, as stated in the *Dammann Case, i.e.,* to protect the public against the evil of letting a public official use his official power and influence to augment his own salary; to protect individual officers against legislative oppression; and to prevent persons from using the prestige and power which they possess by virtue of their public office from using same to their personal advantage, applies equally well to county judges as to circuit judges and justices of this court.

The reasoning of *State ex rel. Sullivan v. Boos* does not apply to the instant facts because the salary of circuit judges can only be fixed by the legislature under sec. 10, art. VII of the constitution. When additional compensation is authorized by statute to be paid to a circuit judge by a county, such payment to be valid must be pursuant to a valid delegation to the county of legislative authority, the exercise of which is subject to sec. 26, art. IV. The compensation is in legal effect fixed and determined by the legislature even though not paid out of the state treasury and this is sufficient to make sec. 26, art. IV, applicable. However, there is no requirement in the constitution that the legislature must determine the compensation of county judges.

Although the same public policy which inspired sec. 26, art. IV, has been applied by the legislature by statute to county judges in many instances over the years, at the present time no statute exists prohibiting county boards from granting an increase in compensation in midterm to county judges. Sec. 59.15 (1), Stats., has been suspended temporarily by sec. 66.195. Thus to the extent the legislature has authorized but not directed the county to pay additional compensation to county judges under sec. 253.07 over that determined by the legislature and because such compensation is neither definitely fixed by the legislature nor paid out of the state treasury, sec. 26 does not apply.

For the foregoing reasons I concur in the result.

GORDON, J. (*concurring*). I support the exclusion of county judges from the restrictions of sec. 26, art. IV of the Wisconsin constitution, but in reaffirming *State ex rel. Sullivan v. Boos* (1964), 23 Wis. (2d) 98, 126 N. W. (2d) 579, the majority opinion perpetuates and, indeed, aggravates the serious error of that decision.

This court has the awesome responsibility of superintending Wisconsin's judicial system. Yet it is difficult to conceive of a more self-defeating decision than that reached here by the majority. The problem of providing an evenhanded method of compensating judges must be viewed as part of the total picture of improving the administration of justice.

As a result of the majority's decision in the instant case, we will now have the absurd circumstance of circuit judges being denied interim salary increases, but county judges not being so restricted even though this court has held that county judges may constitutionally sit as circuit judges. *State ex rel. McCormack v. Foley* (1962), 18 Wis. (2d) 274, 118 N. W. (2d) 211.

In my opinion, this court should disavow the concept that sec. 26, art. IV, applies to the judiciary. As noted in the dissent in the *Sullivan Case,* the prohibitions of sec. 26 are not contained in those portions of the constitution which relate to the judiciary. They are found instead in the legislative section, and this supports the interpretation herein proposed.

In some 30 other states where a regulation on judges' pay is expressed in a state's constitution, it is found in the section thereof concerning the judiciary. The names of those states and the citations to their respective constitutions are annexed as an appendix to this concurring opinion.

In discussing the location of the restrictions on judicial pay, Mr. Justice MARSHALL stated in *State ex rel. Bashford v. Frear* (1909), 138 Wis. 536, 556, 120 N. W. 216:

"We should say, in passing, that amendments were proposed in the constitutional convention placing the usual restrictions upon changing the salary of a justice of this court, in an appropriate section in the article on the judiciary, but it was not done, as we have seen."

Since the restriction was excluded from the judicial section in the Wisconsin constitution, the court has before it a means of extricating itself from the inequitable and in some instances ridiculous results of previous interpretations relating to judicial salaries. It is especially ironic that the crazy quilt which covers judicial salaries was put together by judges themselves.

When the question of salary adjustment for statutory officers of the *executive* branch was presented to this court, we upheld as constitutional the patently evasive technique described in *State ex rel. Reuss v. Giessel* (1952), 260 Wis. 524, 51 N. W. (2d) 547. However, when given the occasion to set our judicial house in order, we cling to an antiquated interpretation which guarantees an unthinkably confounded salary pattern for the judiciary.

The majority opinion asserts that the meaning of "public officer," as contained in sec. 26, art. IV, cannot "change with the times." However, in my opinion, it is not really "the times" that have changed; rather, it is our comprehension that has grown. To illustrate: When the United States supreme court decided *Betts v. Brady* (1942), 316 U. S. 455, 62 Sup. Ct. 1252, 86 L. Ed. 1595, an indigent prisoner needed legal counsel just as much as he does today. Times have not changed so much as our understanding; as a result it is now held that constitutional due process requires the appointment of counsel for an indigent accused. *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. (2d) 799.

The majority opinion points out that such respected jurists as Mr. Chief Justice Dixon and Mr. Chief Justice Winslow

were of the opinion that judges were within the definition of "public officer." So, too, however, when *Plessy v. Ferguson* (1896), 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256, was decided, such respected justices as Messrs. FULLER, FIELD, and WHITE were of the firm opinion that the use of separate but equal facilities did not deny equal protection of the laws to Negroes. When this view was rejected in *Brown v. Board of Education* (1954), 347 U. S. 483, 74 Sup. Ct. 686, 98 L. Ed. 873, it was not so much that times had changed but rather that our general awareness had matured.

It is this kind of comprehension and enlightenment that the Kentucky court recently evidenced in rejecting a pre-existing, narrow interpretation as to which public officers were included within its constitutional limitation regarding salary increases. *Board of Education of Graves County v. De Weese* (Ky. 1960), 343 S. W. (2d) 598. Said the Kentucky court, at page 606:

"Where it is possible, the constitution should be construed liberally, that it may continue as a useful instrument in the life of our society. Doubtful questions ought to be resolved in favor of the freedom of the living generation to govern its own affairs in the light of modern circumstances."

The mere fact that judges have heretofore been included within sec. 26, art. IV, does not make that interpretation immortal or imperishable. When the application of *stare decisis* permits the disparities which are here involved, judges should not blindly follow the outmoded precedents. In *Washington v. Dawson & Co.* (1924), 264 U. S. 219, 238, 44 Sup. Ct. 302, 68 L. Ed. 646, Mr. Justice BRANDEIS stated:

"*Stare decisis* is ordinarily a wise rule of action. But it is not a universal, inexorable command. The instances in which the Court has disregarded its admonition are many."

Mr. Justice HOLMES expressed a similar point of view in *Bain Peanut Co. v. Pinson* (1931), 282 U. S. 499, 501, 51 Sup. Ct. 228, 75 L. Ed. 482:

"The interpretation of constitutional principles must not be too literal. We must remember that the machinery of government would not work if it were not allowed a little play in its joints."

In *Milwaukee v. Milwaukee E. R. & L. Co.* (1921), 173 Wis. 400, 406, 180 N. W. 339, 181 N. W. 821, this court said:

"Law is the rule of reason applied to existing conditions. Obviously, when conditions change there must be a corresponding change in the law, else it would cease to be a rule of reason and would become a mere arbitrary static rule. . . . *To do justice, then, under existing conditions, is its paramount office—all else, even the most venerable precedents, must yield to that office.*" (Emphasis added.)

Blackstone in his Commentaries (Vol. 1, p. 70), put the matter in these words: "Precedents and rules must be followed, unless flatly absurd or unjust." For one circuit judge to earn thousands of dollars per year more than another circuit judge in the same circuit is "absurd or unjust." For one justice of the supreme court to earn as much as $10,000 per year more than another justice for the same services is "absurd or unjust." For circuit judges to be barred from interim salary adjustments while county judges (who may sit as circuit judges) are permitted to receive them is "absurd or unjust."

## APPENDIX.

States with an explicit mandate regarding changes in judges' pay found in the *judiciary* section of their respective constitutions: