CLYDE M. SULLIVAN, Secretary, Department of Employe Trust Funds
You request my opinion on a number of questions concerning the effect of ch. 310, Laws of 1971, on the statutes relating to administration of the Wisconsin Retirement Fund, Public Employes Social Security Fund and the Municipal Group Life Insurance Program. *Page 21 
Under sec. 253.25 of the Wisconsin Statutes, prior to repeal and recreation by ch. 310, Laws of 1971, public administrators were generally considered by your Department to be county officials and eligible for participation in the above-stated benefit programs if they met the other statutory criteria. Chapter 310, however, established the status of public administrators to be that of independent contractors. New subsection 253.25 (4) as created in sec. 3 of ch. 310 reads:
"(4) STATUS. The public administrator and acting public administrator, except when an assistant district attorney, shall be deemed independent contractors retained by the department of revenue and not employes of the county or state."
Your first question, and the basis therefor, is stated in your letter as follows:
"1. In most counties (those having `absolute' Social Security coverage) virtually every `employe' is required to participate in the Federal Social Security program, regardless of the amount of time worked or the amount of compensation received. The Social Security Act defines `employe' to include all officers of a state or political subdivision. Thus if a public administrator is a public officer, we must question whether s. 253.25 (4) is competent to set aside what is already a matter of statute and agreement between the State of Wisconsin and the Federal Department of Health, Education and Welfare. (The State, in such agreement, and under the statutes, has bound itself to all provisions of the Social Security Act and regulations adopted pursuant thereto.)"
Coverage of state and local governments under the Social Security Act is voluntary and accomplished only by agreement of the State of Wisconsin with the U.S. Secretary of Health, Education and Welfare. The State of Wisconsin, by agreement with the federal government, contracts to buy social security protection for the employes it brings under the agreement.42 U.S.C. § 418.
The agreement between the state and U.S. Secretary of Health, Education and Welfare provides as to coverage:
"(4) (B) Services Covered. This agreement includes all services performed by individuals as employes of the State and as employes *Page 22 
of those political subdivisions listed in the appendix attached hereto, except:"
The exceptions in the portion of paragraph (4) (B) quoted above are not material in light of paragraph 4 (B) (7), which reads:
"(7) Effective April 1, 1966, the only exclusions covering positions not under a retirement system (including any retirement system created by ch. 155 or ch. 201 of the Wisconsin Laws of 1937 as amended) which shall be in effect under this federal-state agreement shall be those exclusions which are mandatory under federal law (i.e., those provided in (B) 2 through (B) 5 of said agreement) and the exclusion provided by (B) 6 of said agreement as amended by Modification No. 146. This provision is applicable to such positions of employes of the state and of all political subdivisions of the state already covered or hereafter to be covered under said agreement."
This section of the federal-state agreement is implemented from the state end by sec. 40.41 (5), Stats., which reads:
"(5) Effective April 1, 1966, with the exception of the exclusions under sub. (10) the only exclusions covering positions not under a retirement system which shall be in effect under the state-federal agreement pursuant to action taken under sub. (1) shall be those exclusions which are mandatory under federal regulations."
Municipalities, therefore, have authority under sec. 40.41 (1), Stats., to elect only "absolute coverage" of employes. The only alternative coverage is that required for all employes included under the Wisconsin Retirement Fund under subsection (2) of sec.40.41. Section 40.41 reads in material part:
"40.41 Coverage. (1) Each public agency other than the state may determine to be included under OASDHI through the adoption of a resolution by the governing body thereof with respect to the coverage groups specified in such resolution, which shall also state the effective date of coverage.
"(2) * * * all participating municipalities which have acted pursuant to s. 41.05 to be included under the Wisconsin retirement fund are included when the participating employes thereof are eligible, * * *." *Page 23 
As of August 1, 1971, 54 counties in Wisconsin had taken action to provide "absolute coverage" while the remaining 17 counties provided social security coverage through participation in the Wisconsin Retirement Fund. (Milwaukee County is not a participating employer in the Wisconsin Retirement Fund.)
By sec. 3 of ch. 310, Laws of 1971, the legislature declared that public administrators were thereafter to be "deemed independent contractors." Independent contractors are excluded from coverage in the Wisconsin Retirement Fund by sec. 41.02 (12) (e), Stats. That such exclusion from the fund was clearly intended by the legislature is apparent from the following note to 1971 Senate Bill 471 which became ch. 310, Laws of 1971:
"Sub. (4) is new. Its purpose is to clarify the status of the public administrator and acting public administrator as independent contractors retained by the department of revenue and not as government employes. They will thus not be subject to or qualify for such employe-connected obligations and programs as the following: withholding of state income tax, workmen's compensation, retirement fund programs and group health, accident or life insurance programs."
It is, therefore, my opinion that in those counties, where participation in Social Security is based solely upon participation in the Wisconsin Retirement Fund, ch. 310, Laws of 1971, has by ending the participation of public administrators in the Retirement Fund, effectively ended their social security coverage as county employes. The situation is different, however, in those counties which have elected "absolute coverage" of employes, for in these counties all employes are covered (except mandatory exclusions under the Social Security Act), regardless of eligibility for the retirement fund.
Chapter 310, Laws of 1971, establishes public administrators as independent contractors. The federal-state agreement at part (A) (2) defines "employee" as:
"(2) The term `employee' means an employee as defined in section 210 (k) of the Social Security Act and shall include an officer of the State or of a political subdivision thereof." *Page 24 
While the determination of who is an officer of a state or political subdivision is determined under state law, the determination of who is an "employee" is determined under Federal law. The Handbook for State Social Security Administrators of the U.S. Department of Health, Education and Welfare reads in applicable part at sec. 267:
"267. Definition of Employee. Who is an employee under the common-law rules or Federal Statutory definition is determined in accordance with the provisions of the Social Security Act and the applicable regulations. Who is an officer of a State or political subdivision and therefore an employee is determined by the State law provisions.
"Under the Social Security Act, the term employee includes:
"(a) An individual who, under the usual common-law rules applicable in determining an employer-employee relationship, has the status of an employee; and
"(b) An individual who is an employee under the statutory definition in § 210 (j) of the Act. These definitions include an officer of a corporation as well as certain agent drivers, salesmen, and homeworkers. Generally, these definitions are not applicable to State and local governments; and
"(c) An officer of a State or political subdivision."
For purposes of the federal-state agreement, designation of public administrators as "independent contractors" is not sufficient to exclude them from coverage if in fact they are "employees." 20 C.F.R. 404.1004 (2) reads:
"(2) If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if such relationship exists, it is of no consequence that the employee is designated as a partner, co-adventurer, agent, independent contractor, or the like."
The Social Security Commissioner was requested by the State of Oklahoma to issue a ruling on whether motor license agents appointed by the Oklahoma Tax Commission, pursuant to statutory authority, were state employes. The Oklahoma legislature enacted a law specifically providing that "such agents be self-employed *Page 25 
independent contractors." The Commissioner held that such agents were employes of the state notwithstanding the state law designating them as independent contractors. The administrator stated at page 147 of such ruling (SSR 68-23 C.B. 1968, p. 145):
"The statutory provisions cited above clearly indicate that motor license agents in Oklahoma are subject to the direction and control of the State through the Tax Commission, and that the Commission either exercises or reserves the right to exercise such direction and control by means of instructions issued to them. The agents are removable at the will of the Tax Commissioner; they are required to furnish and file bonds, and must perform all duties required of them by the Commission. Under the facts recited, motor license agents in Oklahoma, held
employees of the State within the meaning of section 210 (j) of the Social Security Act. The fact that they are designated in the State law as self-employed independent contractors under the supervision of the State Tax Commission does not change this result."
More recently, the Commissioner was asked by the State of Missouri for a ruling as to whether fee-paid public administrators were employes and, therefore, whether their income therefrom constituted covered wages under the applicable federal-state agreement. S.S.R. 72-36. The Commission held that the subject public administrators were public officers and, therefore, employes whose income constituted covered wages. The Commissioner concluded his ruling with these words:
"The provisions of the State's agreement, and the definitions contained therein, were not changed in any way by H.B. 635 since the State would have no authority after entering into an agreement to later redefine its scope by unilateral action or in a manner which would contravene the definitions as set forth in the agreement."
It should be here noted that although the legislature in ch. 310, Laws of 1971, declared public administrators to be independent contractors and not employes, it did not state therein that such administrators were not public officials. There is also a notable absence in the explanatory note to subsec. (4), previously quoted, of any reference to social security deductions. *Page 26 
The Handbook for State Social Security Administrators of the U.S. Department of Health, Education and Welfare provides the following statement applicable to determination of who is a public officer, at sec. 272:
"272. Public Officer. — An officer of a State or political subdivision is an employee by statutory definition. Generally, the statutory authority establishing the position describes the occupant of a position as a public officer if, in fact, that is his status. Indicative of such status are provisions that the individual has tenure in his position and that he takes an oath of office. Generally, a public officer exercises some part of the sovereign power of the State or political subdivision. (A notary public and a juror perform the functions of a public office but are not public officers.)"
The basis for determining whether an individual is a public officer is set forth in Martin v. Smith (1941). 239 Wis. 314,1 N.W.2d 163. The court therein stated at page 332
"`to constitute a position of public employment a public office of a civil nature, it must be created by the constitution or through legislative act; must possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public; must have some permanency and continuity, and not be only temporary or occasional; and its powers and duties must be derived from legislative authority and be performed independently and without the control of a superior power, other than the law, except in case of inferior officers specifically placed under the control of a superior officer or body, and be entered upon by taking an oath and giving an official bond, and be held by virtue of a commission or other written authority.'"
The position of public administrator as created by legislative act requires taking of the official oath and filing of a bond. Section 3 of ch. 310, Laws of 1971. Public administrator is a permanent office even though any individual holding such office serves only "until his successor has been appointed." See Burtonv. State Appeal Board (1968), 38 Wis.2d 294, 302,156 N.W.2d 386. Some of the duties of the public administrator are set forth in the following sections of the statutes created by ch. 310, Laws of 1971: *Page 27 
"72.23 (2) INTEREST MAY BE WAIVED. The department, authorized public administrator or county court may waive interest on any additional tax arising from the discovery of property which was omitted in the original determination of tax. This subsection applies only where due diligence has been exercised in marshaling the assets."
"72.25 RELEASE OR TRANSFER OF LIEN. Until this tax is paid it is a lien upon the property transferred except:
"(1) When the department or authorized public administrator is satisfied that collection of the tax will not be jeopardized, either may release this lien on all or part of real property. A duly executed release of the lien may be recorded with the register of deeds of the county in which the property is located. The recording fee shall be the same as for the recording of a mortgage satisfaction.
"* * *
"72.31 PUBLIC ADMINISTRATOR. (1) GENERAL DUTIES. The public administrator shall represent the department and shall:
"* * *
"(b) Appear for and act in behalf of the county and state with regard to the determination of tax.
"* * *
"(3) AUTHORITY WHICH THE DEPARTMENT MAY DELEGATE; PROCEDURE. (a) Authority. A public administrator may grant closing certificates, lien waivers or both, in all no-tax cases. In its discretion the department may delegate this authority in tax cases where the total value of property transferred by reason of a death or in contemplation of death does not exceed $50,000."
The above duties involve an exercise of the sovereign power of the state free from the control of a superior power. Public administrators are, therefore, public officers under the guidelines of Martin v. Smith, supra.
The question remains as to whether public administrators are county or state officers for social security purposes. In Stateex rel. *Page 28 Sheets v. Fay (1972), 54 Wis.2d 642, 649, 196 N.W.2d 651, the court determined that family court commissioners were county appointed officials for Wisconsin retirement fund purposes. Determinative of such status were the factors cited in the following excerpt from page 649:
"A number of factors and specific statutory provisions go onto the scales in determining whether plaintiff is a county or state `employee' under the retirement fund act. To begin with, sec. 247.13 (1), Stats. provides the position or family court commissioner, formerly divorce counsel, is created `in each county of the state' and `for such county.' The appointment is to be made annually by `the circuit and county judges in and for such county.' However, the position `may be placed under a county civil service system by resolution of the county board.' In counties having a population of less than 500,000, the county board `. . . shall by resolution provide an annual salary for the family court commissioner. . . .' (Sec. 247.17.) The county board `. . . may also by resolution prescribe such other duties to be performed by him not in conflict with his duties as family court commissioner.' (Sec. 247.17.) Where the county board establishes the family court commissioner's salary, pays it, and may prescribe additional duties to be performed by him, and where the position is established in each county and `for such county,' we find the proof overwhelmingly requiring a finding that the family court commissioner of Racine county was a county employee, rather than a state employee, under the retirement act and retirement act purposes."
Public administrators are appointed by "each judge of a court having probate jurisdiction under sec. 856.01," invariably all county courts. "In counties of over 200,000, an assistant district attorney may be appointed public administrator." Section 253.25 (1), Stats. (1971). In the event of an assistant district attorney so serving, the fees are paid to the county. Section 72.31 (4) (c), Stats. (1971). A county court may appoint an acting public administrator for a specific case if the public administrator is not available or not qualified to act. Section 253.25 (2), Stats. (1971). The public administrator represents both the State Department of Revenue and the county. Section 72.31 (1) (b), Stats. (1971). Fees are paid "by the county treasurer out of inheritance tax funds in his possession upon order of the county court." Section 72.31 (4) (b), Stats. *Page 29 
(1971). While public administrators are paid fees set by the statutes, the county court may allow additional fees in cases of unusual difficulty.
There is in my opinion sufficient indication that public administrators should be considered county officers for purposes of the Federal-State Social Security agreement. Such appointed officials are appointed by and serve at the pleasure of the county judges. Section 253.25 (1), Stats. (1971). County judges are county officials. State ex rel. Sachtjen v. Festge (1964),25 Wis.2d 128, 130 N.W.2d 457. While public administrators exercise some of the sovereign powers of the state, they are primarily local officers under the control of the county judge. Such public administrators are therefore subject to social security deductions under the Federal-State agreement in the manner as county officers.
Secondly, you question whether a public administrator "in the exercise of his public responsibilities can be excluded from retirement participation." The intent of the legislature to remove public administrators from eligibility for the retirement fund is clearly set forth in a note to 1971 Senate Bill 471 which became ch. 310, Laws of 1971. The note which follows sec. 3 of such bill reads in part:
"They will thus not be subject to or qualify for such employe-connected obligations and programs as the following: * * * retirement fund programs and group health, accident or life insurance programs."
Whatever right public administrators formerly under the Wisconsin Retirement Fund could arguably have to maintenance of such coverage, regardless of sec. 253.25 (4), Stats. (1971), would be based upon the prohibition against impairment of contract of sec.12, Art. I of the Wisconsin Constitution.
In State Teachers' Retirement Board v. Giessel (1960), 12 Wis.2d 5,106 N.W.2d 301, the court held that teachers had contractual rights in the retirement system and, therefore, the legislature could not use earnings of the State Teachers' Retirement System to pay a part of the cost of a study of public employes retirement systems. The court said at pages 9 and 10: *Page 30 
"The nature of the state teachers' retirement system and the rights of the members thereof have been the subject of four prior decisions of this court: State ex rel. Dudgeon v. Levitan (1923),181 Wis. 326, 193 N.W. 499; State ex rel. O'Neil v. Blied (1925),188 Wis. 442, 206 N.W. 213; State ex rel. Stafford v. StateAnnuity Investment Board (1935), 219 Wis. 31, 261 N.W. 718; State ex rel. Thomson v. Giessel (1952), 262 Wis. 51,53 N.W.2d 726. The result of these decisions is that the teachers have a contractual relationship with the state and a vested right in the state teachers' retirement system. The contractual right and vested interest of the teachers in the retirement system are not disputed by the appellant, but it is argued the right of the teachers is not such as would exclude payment of the charge for the governor's study commission out of the earnings of the state teachers' retirement fund. It is argued that the plaintiff board is required to pay out funds according to law and appropriations from the earnings of the fund have been made by law each year, and therefore there is no vested right in the gross earnings of the fund. We do not agree. The teacher's right, based on contract, extends to the retirement system. The earnings on investments, part of which represent contributions made by the teachers and part contributed by the state under the contract with them, constitute assets of the system. The reserve for contingencies set up by the board is a part of the system."
While I am aware of no case wherein the court has had the occasion to rule on the question of the contractual relationship of members of the Wisconsin Retirement Fund, the essential features of the teachers' fund are similar to the degree that I consider the reasoning of the Giessel case as quoted just above to be persuasive in similar situations. The Wisconsin Retirement Fund and the State Teachers' Retirement System were both created as joint contributory, money-purchase systems. In both cases the contributions by the participants and municipalities are held in trust for members of the funds. Secs. 41.02 (1) (a) and 42.22 (5), Stats. Most features essential to the subject question are similar. I conclude, therefore, that members of the Wisconsin Retirement Fund have contractual and vested rights in their fund as it exists on the day of their retirement similar to those which the court has determined to be vested in teachers. *Page 31 
This does not mean that the legislature is without the power to delete persons presently covered from future coverage in the Wisconsin Retirement Fund and from group life insurance by changing the position from that of public officer or employe to that of independent contractor or by specifically deleting a group from coverage. The former member of the funds is entitled to whatever benefits were vested during the period that the applicable legislation required or permitted his participation. These benefits based upon past service are not taken from public administrators by ch. 310, Laws of 1971, although such public administrators are precluded from future participation in the funds. I see no constitutional proscription which precludes the legislature from removing the public administrator group from the Wisconsin Retirement Fund.
RWW:WMS